# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS

|  |  |
|---|---|
| AARON RICH<br><br>                    Movant,<br><br>        v.<br><br>CHAPWOOD CAPITAL<br>INVESTMENT MANAGEMENT<br><br>                    Respondent. | *Ancillary to* Civil Action No. 1:18-cv-00681-RJL |

## APPENDIX IN SUPPORT OF MOTION TO COMPEL CHAPWOOD CAPITAL INVESTMENT MANAGEMENT TO COMPLY WITH MOVANT'S RULE 45 SUBPOENA

Per Local Rule 7.1(i), Movant Aaron Rich submits this Appendix in Support of his Motion and Brief in Support of Motion to Compel Chapwood Investment Management to Comply with Movant's Rule 45 Subpoena. The following documents are hereby made a part of Movant's Motion and Brief in support thereof:

| | |
|---|---|
| **Exhibit A** | Email from S. Hall to Mr. Ed Butowsky and Mr. Matthew Couch, regarding *Notice of Third Party Subpoena*, all dated June 19, 2019 |
| **Exhibit B** | Affidavit of June 19, 2019 service of the third-party subpoena duces tecum on Chapwood Capital Investment Management, dated June 24, 2019. |
| **Exhibit C** | Email correspondence between Mr. Butowsky's former counsel Philip Harvey and Movant's counsel, regarding Chapwood Subpoena, dated July 6, 2019. |
| **Exhibit D** | Email correspondence between Mr. Butowsky's former counsel Philip Harvey and Movant's counsel, copying Movant's counsel, regarding Chapwood Subpoena, dated July 6, 2019. |
| **Exhibit E** | Email correspondence between Mr. Butowsky's former counsel Philip Harvey and Movant's counsel, |

| | |
|---|---|
| | copying Steven Biss and Ty Clevenger, regarding Chapwood Subpoena, dated October 21, 2019. |
| **Exhibit F** | Document with Bates number Butowsky 0000622, dated August 9, 2017, marked "Highly Confidential – Attorneys' Eyes Only" by Defendant Butowsky. |
| **Exhibit G** | Document with Bates number Butowsky 0000967, dated August 14, 2017, marked "Highly Confidential – Attorneys' Eyes Only" by Defendant Butowsky. |
| **Exhibit H** | Document with Bates number CHAVEZ0000915, dated September 25, 2017. |
| **Exhibit I** | Document with Bates number WHEELER0000027, dated March 6, 2017. |
| **Exhibit J** | Redacted Complaint publicly filed on March 26, 2018 in *Aaron Rich v. Edward Butowsky et al.*, No. 1:18-cv-00681-RJL (D.D.C.). |
| **Exhibit K** | Email from S. Hall to Mr. Butowsky regarding Chapwood Subpoena, dated November 8, 2019. |

Dated: November 12, 2019

Respectfully submitted,

*/s/ Paul J. Skiermont*
Paul J. Skiermont (TX Bar No. 24033073)
SKERMONT DERBY LLP
1601 Elm Street, Suite 4400
Dallas, TX 75201
Tel: (214) 978-6600
pskiermont@skiermontderby.com


Samuel Hall (D.C. Bar No. 242110)
*pro hac vice pending*
WILLKIE FARR GALLAGHER LLP
1875 K Street NW, Washington, DC 20006
Tel: (202) 303-1443 / Fax: (202) 303-2000
shall@willkie.com

***Attorney for Movant Aaron Rich***

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on November 12, 2019, the foregoing document was emailed to Edward Butowsky at ebutowsky@gmail.com, Eden Quainton at equainton@gmail.com, and Matthew Couch and America First Media at mattcouch@af-mg.com. In addition, the foregoing document was sent via Federal Express to the following address:

Chapwood Capital Investment Management
4965 Preston Park Blvd #100
Plano, TX 75093


Dated: November 12, 2019


*/s/ Samuel Hall*
Samuel Hall

# EXHIBIT A

| | |
|---|---|
| **From:** | Hall, Samuel |
| **To:** | ebutowsky@gmail.com; Matt Couch |
| **Cc:** | Joshua Riley; Gottlieb, Michael; Meryl Governski |
| **Subject:** | Rich v. Butowsky - Notice of Third Party Subpoena |
| **Date:** | Wednesday, June 19, 2019 8:01:15 AM |
| **Attachments:** | 2019.06.19 S. Hall to Chapwood.pdf |
| | 2019.06.19 Chapwood Rule 45 Notice (w attachments).pdf |

Mr. Butowsky and Mr. Couch,

Please find attached notice of our intent to serve an updated third-party subpoena, along with a related cover letter.

Regards,

**Samuel Hall**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1443 | Fax: +1 202 303 2443
shall@willkie.com | vCard | www.willkie.com bio

# WILLKIE FARR & GALLAGHER LLP

1875 K Street, N.W.
Washington, DC 20006-1238

Tel: 202 303 1000
Fax: 202 303 2000

June 19, 2019

Chapwood Capital Investment Management
4965 Preston Park Blvd #100
Plano, TX 75093

Re:     *Aaron Rich v. Edward Butowsky et al.*, No. 1:18-cv-00681-RJL (DDC)

To Whom it May Concern,

Please find enclosed an amended Rule 45 subpoena related to the above-captioned litigation which will replace the prior subpoena we served on Chapwood Capital Investment Management on May 28, 2019. We have included in this subpoena a location for document production in Dallas, Texas but we would be happy to discuss an electronic transfer of the documents, or any other means of transfer that would be more convenient.

Please feel free to reach out to us at the email below if you have any questions.


Respectfully,

/s/ Samuel Hall
Willkie Farr & Gallagher LLP
1875 K Street, NW
Washington, DC 20006
shall@willkie.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AARON RICH<br><br>               Plaintiff,<br><br>    v.<br><br>EDWARD BUTOWSKY,<br>MATTHEW COUCH, and<br>AMERICA FIRST MEDIA,<br><br>               Defendants. | Civil Action No. 1:18-cv-00681-RJL<br><br>Hon. Richard J. Leon<br><br>**PLAINTIFF AARON RICH'S<br>NOTICE OF INTENT TO SERVE<br>THIRD-PARTY SUBPOENA** |

TO ALL DEFENDANTS:

PLEASE TAKE NOTICE, that pursuant to Rule 45 of the Federal Rules of Civil

Procedure, Plaintiff Aaron Rich intends to serve a third-party subpoena on Chapwood Capital

Investment Management.  The subpoena is attached to this Notice.

Dated: June 19, 2019

                     /s/ *Michael J. Gottlieb*
                     MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
                     WILLKIE FARR & GALLAGHER LLP
                     1875 K Street NW
                     Washington, DC 20006
                     Tel: (202) 303-1000
                     Fax: (202) 303-2000
                     mgottlieb@willkie.com

                     JOSHUA P. RILEY (D.C. Bar No. 1026900)
                     MERYL C. GOVERNSKI (D.C. Bar No. 1023549)
                     BOIES SCHILLER FLEXNER LLP
                     1401 New York Ave NW
                     Washington, DC  20005
                     Tel: (202) 237-2727
                     Fax: (202) 237-6131
                     jriley@bsfllp.com
                     mgovernski@bsfllp.com

                     ***Attorneys for Plaintiff Aaron Rich***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 19, 2019, a copy of the foregoing document was emailed to

Defendant Edward Butowsky at ebutowsky@gmail.com and Matthew Couch and America First

Media via Defendant Couch at mattcouch@af-mg.com.  These Defendants consented in writing

to receive filings via email pending registration to receive electronic notification of filings.

Dated: June 19, 2019

/s/ *Michael J. Gottlieb*
MICHAEL J. GOTTLIEB (D.C. Bar No. 974960)
WILLKIE FARR & GALLAGHER LLP
1875 K Street NW
Washington, DC 20006
Tel: (202) 303-1000
Fax: (202) 303-2000
mgottlieb@willkie.com

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | | |
|---|---|---|
| Aaron Rich | ) | |
| _Plaintiff_ | ) | |
| v. | ) | Civil Action No.   1:18-cv-00681-RJL |
| Edward Butowsky et al. | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:           Chapwood Capital Investment Management
              4965 Preston Park Blvd #100,  Plano, TX 75093
                    _(Name of person to whom this subpoena is directed)_

✓ _Production:_ **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A, attached here.

| Place: Michael J. Gottlieb, | Date and Time: |
|---|---|
| C/O Paul Skiermont, | |
| 1601 Elm Street, Suite 4400, Dallas, Texas 7520 | 07/11/2019 10:00 am |

❏ _Inspection of Premises:_ **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     06/19/2019

        _CLERK OF COURT_

                                        OR

        _____                _____
        _Signature of Clerk or Deputy Clerk_                _Attorney's signature_

The name, address, e-mail address, and telephone number of the attorney representing _(name of party)_   Aaron Rich
_____ , who issues or requests this subpoena, are:

Michael J. Gottlieb; Willkie Farr & Gallagher LLP, 1875 K Street, N.W. Washington, DC 20006; mgottlieb@willkie.com;
                                                                    202-303-1442
        **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:18-cv-00681-RJL

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

    ❒ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

    ❒ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
   **(i)** is a party or a party's officer; or
   **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
   **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
   **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
   **(i)** fails to allow a reasonable time to comply;
   **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
   **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
   **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
   **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

   **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
   **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
   **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
   **(i)** expressly make the claim; and
   **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## SCHEDULE A

This subpoena for documents, including each individual Request for Documents (collectively, the "Requests"), shall be read and interpreted in accordance with the definitions and instructions identified below.

## GENERAL DEFINITIONS

Plaintiffs incorporate by reference all the instructions, definitions, and rules contained in the Federal Rules of Civil Procedure and for purposes of this Subpoena, the following definitions shall apply:

1.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition.

2.      The terms defined herein should be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3.      "Chapwood," "You," "Your," or "Yours" refers to third-party Chapwood Capital Investment Management and includes all of its current and former subsidiaries and affiliates; all divisions, predecessors, successors and assigns of each of the foregoing; and all current and former officers, directors, employees, agents, consultants, attorneys, accountants, administrators and all other persons, organizations, or others acting or purporting to act on behalf, or under the control, of each of the foregoing.

4.      "Communication" means, in addition to its customary and usual meaning, every contact of any nature, whether documentary, electronic, written or oral, formal or informal, at any time or place and under any circumstances whatsoever whereby information of any nature is transmitted or transferred by any means, including, but not limited to letters, memoranda, reports, emails, text messages, instant messages, social media, telegrams, invoices, telephone

1

conversations, voicemail messages, audio recordings, face-to-face meetings and conversations, or any other form of communication, and any Document relating to such contact, including but not limited to correspondence, memoranda, notes or logs of telephone conversations, e-mail, electronic chats, text messages, instant messages, direct or private messages, correspondence in "meet ups" or chat rooms, and all other correspondence on Social Media. Without limiting the foregoing in any manner, commenting as well as any act of expression that is not directed at a specific person, or otherwise may not be intended to provoke a response (such as a social media posting, "likes," "shares," or any other form of reacting to another's use of Social Media), are forms of communication.

5.     The term "relating to" means "concerning," "referring to," "describing," "evidencing," or "constituting."

6.     "Document" or "Documents" means documents broadly defined in Rule 34 of the Federal Rules of Civil Procedure and includes (i) papers of all kinds, including but not limited to, originals and copies, however made, of letters, memoranda, hand-written notes, notebooks, work-pads, messages, agreements, rough drafts, drawings, sketches, pictures, posters, pamphlets, publications, news articles, advertisements, sales literature, brochures, announcements, bills, receipts, credit card statements, and (ii) non-paper information of all kinds, including but not limited to, any computer generated or electronic data such as digital videos, digital photographs, audio recordings, podcasts, Internet files (including "bookmarks" and browser history), online articles and publications, website content, electronic mail (e-mail), electronic chats, instant messages, text messages, uploads, posts, status updates, comments, "likes", "shares", direct messages, all Social Media activity, or any other use of ephemeral communications services or Social Media, and (iii) any other writings, records, or tangible objects produced or reproduced

2

mechanically, electrically, electronically, photographically, or chemically.  Without limiting the foregoing in any way, every Communication is also a Document.

7.      The term "Electronically Stored Information" or "ESI" is defined to be synonymous in meaning and equal in scope to the usage of "electronically stored information" in Fed. R. Civ. 34(a)(1)(A).  "ESI" includes data on all servers, including IP addresses, MAC addresses, archived data, deleted data, and legacy data, as well as data on removable electronic media and in any other location where documents relevant to the Requests may be found.

8.      "Social Media" means any forum, website, application, or other platform on which persons can create, transmit, share, communicate, or comment upon any information, ideas, or opinions, or otherwise engage in social networking, including but not limited to: Twitter, Gab, MeWe, Periscope, Facebook, Discord, Reddit, Imgur, SnapChat, Instagram, Google+, 4chan, 8chan, Tumblr, Youtube, LinkedIn, Flikr, Reddit, Quora, Disquis, Slack, Whisper, Yik Yak, Medium, WordPress, and instant messaging services such as Signal, WhatsApp, Facebook Messenger, Hangouts, Skype, Line, KakaoTalk, Telegram, CyberDust.    Without limiting the foregoing in any manner, and by way of example only, the following are Social Media activity: uploading, posting, commenting, reacting (e.g., "liking" a post), sharing, and communicating on comment sections of Social Media.

## SPECIFIC DEFINTIONS

9.      "Complaint" means the complaint filed in the above-captioned litigation as ECF docket entry number 3.

10.     The "Rich Family" refers to the family of Seth Rich and includes, but is not limited to, Seth Rich, Aaron Rich, Mary Rich, and Joel Rich.

## INSTRUCTIONS

Plaintiffs incorporate by reference all the instructions, definitions, and rules contained in the Federal Rules of Civil Procedure and for purposes of this Subpoena, the following instructions shall apply:

A.      Your responses to the following Requests shall be based on all knowledge and information (whether or not hearsay or admissible) in Your possession, custody, or control.

B.      Produce all responsive documents in Your possession, custody, or control, regardless of whether such documents are possessed directly by You or persons or entities under Your control.

C.      Produce each responsive document in its entirety including with all attachments or other matters affixed thereto.  Documents attached to each other should not be separated.

D.      Any alteration of a responsive document, including any marginal notes, handwritten notes, underlining, date stamps, received stamps, endorsed or filed stamps, drafts, revisions, modifications, and other versions of a document, is a responsive document in its own right and must be produced.

E.      If no responsive documents exist for any particular requests, specifically state that no responsive documents exist.

F.      If any otherwise responsive document was, but is no longer, in existence or in Your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from Your possession or control.

4

G.      In the event any Document or Communication is withheld on the basis of the attorney-client privilege, work product doctrine, or any other right to non-disclosure on any other basis, You shall produce a Privilege Log.

H.      If You object to production in response to a specific request, You shall state with particularity the basis for all objections with respect to such request. You shall respond to any and all portions of any request that do not fall within the scope of Your objection.

I.      Whether or not You object, You must preserve all Documents and Communications relevant to the above-captioned matter, including all Documents and Communications responsive to these Requests.

J.      Pursuant to Rule 45(e) of the Federal Rules of Civil Procedure, documents shall be produced either (a) as they are kept in the usual course of business (in which case they shall be produced in such fashion as to identify the department, branch, or office in whose possession it was located and, where applicable, the natural person in whose possession it was found or the server or central file in which it was found, and the address of each document's custodian(s)), or (b) segregated as responsive to a specific Request enumerated in these Requests, with such specific Request identified.

K.      All Documents produced in electronic form shall include related metadata. Produce in TIFF or native format (i.e., Word documents as .DOC or .DOCX files, Outlook emails as .PST files, Excel spreadsheets as .XLS or .XLSX files, Adobe PDF documents as .PDF files). For all forms of ESI, ensure that ESI is provided in unencrypted form and free of password protection.

5

## DOCUMENTS TO BE PRODUCED

### Document Request No. 1

All Documents and Communications to or from Chapwood relating to any allegations in the Complaint in the above-captioned matter, including but not limited to Communications with The Washington Times, Admiral James A. Lyons, Cassandra Fairbanks, The Gateway Pundit, or Rod Wheeler and all Communications among any parties relating to the Rich Family.

### Document Request No. 2

All Documents and Communications concerning any lawsuits, threats of lawsuits, consumer complaints, disciplinary actions, or accusations that accused You of fraudulent conduct (including making false statements), including but not limited to while You maintained a relationship with Charles Schwab.

### Document Request No. 3

Documents sufficient to show Your annual net income between 2016 through present.

# EXHIBIT B

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

Aaron Rich

                              Plaintiff

                                              vs.          Civil Action No.: 1:18-cv-00681-RJL

Edward Butowsky, et al.

                      Defendant(s)

## AFFIDAVIT OF SERVICE

I, Lee H. Russell, a Private Process Server, being duly sworn, depose and say:

That I have been duly authorized to make service of the Letter dated June 19, 2019 and Subpoena Duces Tecum with Schedule A in the above entitled case.

That I am over the age of eighteen years and not a party to or otherwise interested in this action.

That on 06/19/2019 at 2:10 PM, I served Chapwood Capital Investment Management with the Letter dated June 19, 2019 and Subpoena Duces Tecum with Schedule A at 4965 Preston Park Boulevard, Suite #100, Plano, Texas 75093 by serving Edward Butowsky, Managing Partner, authorized to accept service.

Edward Butowsky is described herein as:

Gender: Male   Race/Skin: White   Age: 50-55   Weight: 220-230   Height: 6'0"   Hair: Gray   Glasses: No

I declare under penalty of perjury that this information is true and correct.

6/24/19
Executed On

Lee H. Russell

Client Ref Number:099980.10760
Job #: 1563575

Capitol Process Services, Inc. | 1827 18th Street, NW, Washington, DC 20009 | (202) 667-0050

App'x 16

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
District of Columbia

| | |
|---|---|
| Aaron Rich | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:18-cv-00681-RJL |
| Edward Butowsky et al. | ) |
| | ) |
| *Defendant* | ) |

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:          Chapwood Capital Investment Management
             4965 Preston Park Blvd #100,  Plano, TX 75093

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Schedule A, attached here.

| Place: Michael J. Gottlieb | Date and Time: |
|---|---|
| C/O Paul Skiermont, | |
| 1601 Elm Street, Suite 4400, Dallas, Texas 7520 | 07/11/2019 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:     06/19/2019

*CLERK OF COURT*

OR

*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*     Aaron Rich
_____ , who issues or requests this subpoena, are:

Michael J. Gottlieb; Willkie Farr & Gallagher LLP, 1875 K Street, N.W. Washington, DC 20006; mgottlieb@willkie.com;

### Notice to the person who issues or requests this subpoena          202-303-1442
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# EXHIBIT C

| From: | Philip Harvey |
|---|---|
| To: | Michael Gottlieb |
| Cc: | Joshua Riley; Sam Hall; Paris Sorrell |
| Subject: | RE: Chapwood Subpoena |
| Date: | Friday, July 26, 2019 6:23:23 PM |
| Attachments: | BF5BAB8B457D43FEA9D964D4E086ECE2.png |

Mike – I do not represent Chapwood Investments and do not know who, if anyone, currently does.  I will ask Mr. Butowsky.  I only represent Mr. Butowsky in defense of the claims asserted in the DC case.  Sorry for the delay in responding.

Phil

**Philip J. Harvey**
**Harvey & Binnall, PLC**
**717 King Street, Suite 300**
**Alexandria, Virginia  22314**
**703.888.1943**
**pharvey@harveybinnall.com**

---

**From:** Gottlieb, Michael
**Sent:** Tuesday, July 23, 2019 3:04 PM
**To:** 'pharvey@harveybinnall.com'
**Cc:** 'Joshua Riley'; Hall, Samuel
**Subject:** Chapwood Subpoena

Dear Mr. Harvey,

I write to request your client's position with respect to a third-party subpoena issued to Chapwood Capital Investment Management, where Mr. Butowsky is the managing partner and founder.  We initially served Chapwood with the subpoena on May 28, 2019, but never received a response.  On June 20, 2019, we then served an updated subpoena solely for the purpose of providing a new location for document production in Dallas, Texas, and to give Chapwood an additional 21 days to respond.  That response is now almost two weeks late.  We attach the updated subpoena, along with its cover letter here.

We intend to file a motion to compel a response to our subpoena unless you advise us that a response is forthcoming.  If Chapwood has separate counsel, please advise.  If no response is forthcoming, please advise as to your position regarding our proposed motion to compel by no later than 10AM this Thursday, July 25.

Respectfully,

Mike

**Michael Gottlieb**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1442 | Fax: +1 202 303 2442
mgottlieb@willkie.com | vCard | www.willkie.com bio

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT D

| | |
|---|---|
| From: | Gottlieb, Michael |
| To: | "stevenbiss@icloud.com"; "tyclevenger@yahoo.com"; Philip Harvey |
| Cc: | Sam Hall |
| Subject: | RE: Chapwood Subpoena |
| Date: | Tuesday, October 1, 2019 9:41:41 AM |
| Attachments: | Subpeona response 07.24.19.docx |

All —

We properly served a third-party subpoena on Chapwood Capital Investment Management on June 19, 2019. As you can see from the email chain below, Mr. Butowsky personally responded to that subpoena by email to me on July 24, with the document attached here. Nowhere in the response does Mr. Butowsky refer us to Mr. Biss or Mr. Clevenger, or any other attorney for that matter. And Mr. Harvey informed us that he does not represent Chapwood.

Accordingly, please inform me promptly whether you represent Chapwood for purposes of this subpoena so that we may direct further correspondence to you.

Regards,

Mike

**Michael Gottlieb**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1442 | Fax: +1 202 303 2442
mgottlieb@willkie.com | vCard | www.willkie.com bio

---

**From:** Ed Butowsky [mailto:ebutowsky@gmail.com]
**Sent:** Monday, September 30, 2019 5:01 PM
**To:** Hall, Samuel <SHall@willkie.com>
**Cc:** Steven S. Biss <stevenbiss@icloud.com>; Ty Clevenger <tyclevenger@yahoo.com>
**Subject:** Re: Chapwood Subpoena

Since I am represented by legal counsel, I don't think it is appropriate for you to communicate directly with me.

Ty Clevenger or someone else will respond to you.

**From:** "Hall, Samuel" <SHall@willkie.com>

**Date:** Tuesday, September 24, 2019 at 2:15 PM

**To:** Ed Butowsky <ebutowsky@gmail.com>

**Cc:** Philip Harvey <pharvey@harveybinnall.com>, Paris Sorrell <psorrell@harveybinnall.com>, "Gottlieb, Michael" <MGottlieb@willkie.com>, Meryl Governski <mgovernski@bsfllp.com>, Joshua Riley <jriley@bsfllp.com>

**Subject:** Re: Chapwood Subpoena

Mr. Butowsky,

We received your objections and responses to the subpoena we served on Chapwood. Unless we receive documents and/or additional information explaining your responses in further detail—including a detailed description of your efforts to locate responsive documents—we may need to file a motion to compel. At this point, each response appears to be inaccurate.

Specifically, you claim there are no responsive documents to Requests Nos. 1 and 2. We find that hard to believe. As an example, Request No. 2 asks for documents and communications "concerning

any lawsuits, threats of lawsuits, consumer complaints, disciplinary actions, or accusations that accused You of fraudulent conduct (including making false statement), including but not limited to while You maintained a relationship with Charles Schwab[.]" Chapwood itself raises accusation in its suit *Chapwood Capital Investment Management, LLC et al v. Charles Schwab Corporation et al*, No. 18-cv-00287-RAS, that it "lost over 268 customer accounts" due to what it referred to as Schwab's efforts to cause those clients to "question Chapwood and Butowsky's honesty and integrity." (ECF NO. 1 ¶22(c)). Is it Chapwood's position now that it never actually received any complaint related to making false statements?

Moreover, responses to at least two third-party subpoenas in this litigation have resulted in the production of emails to or from Chapwood email addresses. These emails indicate that you did not conduct a sufficient search of documents and communications in Chapwood's custody and control. Your objection that Request No. 3 "is not applicable to anything" is incorrect as a matter of black-letter law. In order to meet relevancy requirements in discovery there only needs to be a "possibility that the information sought may be relevant to the claim or defense of any party." *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123–24 (D.D.C. 2013). Because you are Chapwood's managing partner and founder, and presumably own an equity stake in the company, Chapwood's annual income in 2016 through the present is directly relevant to the calculation of punitive damages against you. *See About Us,* Chapwood Capital Investment Management, *available at* http://www.chapwoodinvestments.com/about-us/; *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993) (noting that the "financial position of the defendant" is "one factor that could be taken into account in assessing punitive damages" (internal quotation marks omitted)); *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) ("At least forty-three states now allow evidence of net worth to be discovered and admitted for the limited purpose of assessing punitive damages. . . . We hold that in cases in which punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth.").

What is more, your objection was untimely, and is thus waived. Objections to a Rule 45 subpoena to produce documents "*must* be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added); *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C.1998) (citation omitted) (concluding that a third party waived objections 16 days after being served with subpoena). Your objection was sent over a month after you were served; as a result, it is clearly waived.

We will remind you that the Court has granted our motions to compel in each instance you have refused to provide documents, including to requests similar to those made against Chapwood. Moreover, the Court has specifically acknowledged that Mr. Rich will also have "to go to the companies that have [documents] in their possession" during discovery. July 31, 2019, Hearing Tr. at 11:18.

If you believe further correspondence on this subpoena would be worthwhile, please let us know. If you are unwilling to discuss this further, we are required under the local rules to ask whether you will oppose a motion to compel against Chapwood. If you do not respond by **Monday September 30, 2019**, we will assume that you are opposed.

Best,

**Samuel Hall**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238

Direct: +1 202 303 1443 | Fax: +1 202 303 2443
shall@willkie.com | vCard | www.willkie.com bio

---

**From:** ed butowsky [mailto:ebutowsky@gmail.com]
**Sent:** Wednesday, July 24, 2019 4:55 PM
**To:** Gottlieb, Michael <MGottlieb@willkie.com>
**Subject:** Chapwood Subpoena

Answers to your subpoena attached.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

## DOCUMENT REQUEST NO. 1

All Documents and Communications to or from Chapwood relating to any allegations in the Complaint in the above-captioned matter, including but not limited to Communications with The Washington Times, Admiral James A Lyons, Cassandra Fairbanks, The Gateway Pundit, or Rod Wheeler and all Communications among any parties relating to the Rich Family.

## Response No 1

Chapwood does not have any Documents or Communications relating to any allegations in the Complaint in the above captioned matter.

## DOCUMENT REQUEST NO. 2

All Documents and Communications concerning any lawsuits, threats of lawsuits, consumer complaints, disciplinary actions, or accusations that accused You of fraudulent conduct (including making false statement), including but not limited to while You maintained a relationship with Charles Schwab.

## Response No 2

There or no Documents or Communications concerning the above.

## DOCUMENTS REQUEST NO. 3

Documents sufficient to show Your annual net income between 2016 through present.

## Response No 3

This is not applicable to anything.

# EXHIBIT E

| From: | Philip Harvey |
|---|---|
| To: | Michael Gottlieb |
| Cc: | stevenbiss@icloud.com; Ty Clevenger; Sam Hall |
| Subject: | Re: Chapwood Subpoena |
| Date: | Monday, October 21, 2019 2:18:19 PM |

My firm does not represent Chapwood.

Phil Harvey

On Mon, Oct 21, 2019, 2:07 PM Gottlieb, Michael <MGottlieb@willkie.com> wrote:

> As I received no response to this, our conclusion is that no one on the "to" chain of this email represents Chapwood for purposes of this subpoena. Please advise otherwise if we are mistaken in that conclusion.
>
>
> **Michael Gottlieb**
> **Willkie Farr & Gallagher LLP**
> 1875 K Street, N.W. | Washington, DC 20006-1238
> Direct: +1 202 303 1442 | Fax: +1 202 303 2442
> mgottlieb@willkie.com | vCard | www.willkie.com bio
>
> ───────────────────────────────
>
> **From:** Gottlieb, Michael
> **Sent:** Tuesday, October 01, 2019 9:42 AM
> **To:** 'stevenbiss@icloud.com' <stevenbiss@icloud.com>; 'tyclevenger@yahoo.com' <tyclevenger@yahoo.com>; Philip Harvey <pharvey@harveybinnall.com>
> **Cc:** Hall, Samuel <SHall@willkie.com>
> **Subject:** RE: Chapwood Subpoena
>
> All –
>
> We properly served a third-party subpoena on Chapwood Capital Investment Management on June 19, 2019. As you can see from the email chain below, Mr. Butowsky personally responded to that subpoena by email to me on July 24, with the document attached here. Nowhere in the response does Mr. Butowsky refer us to Mr. Biss or Mr. Clevenger, or any other attorney for that matter. And Mr. Harvey informed us that he does not represent Chapwood.
>
> Accordingly, please inform me promptly whether you represent Chapwood for purposes of this subpoena so that we may direct further correspondence to you.
>
> Regards,
>
> Mike
>
>
> **Michael Gottlieb**
> **Willkie Farr & Gallagher LLP**
> 1875 K Street, N.W. | Washington, DC 20006-1238
> Direct: +1 202 303 1442 | Fax: +1 202 303 2442
> mgottlieb@willkie.com | vCard | www.willkie.com bio

**From:** Ed Butowsky [mailto:ebutowsky@gmail.com]
**Sent:** Monday, September 30, 2019 5:01 PM
**To:** Hall, Samuel <SHall@willkie.com>
**Cc:** Steven S. Biss <stevenbiss@icloud.com>; Ty Clevenger <tyclevenger@yahoo.com>
**Subject:** Re: Chapwood Subpoena

Since I am represented by legal counsel, I don't think it is appropriate for you to
communicate directly with me.

Ty Clevenger or someone else will respond to you.

**From:** "Hall, Samuel" <SHall@willkie.com>
**Date:** Tuesday, September 24, 2019 at 2:15 PM
**To:** Ed Butowsky <ebutowsky@gmail.com>
**Cc:** Philip Harvey <pharvey@harveybinnall.com>, Paris Sorrell
<psorrell@harveybinnall.com>, "Gottlieb, Michael" <MGottlieb@willkie.com>, Meryl
Governski <mgovernski@bsfllp.com>, Joshua Riley <jriley@bsfllp.com>
**Subject:** Re: Chapwood Subpoena

Mr. Butowsky,

We received your objections and responses to the subpoena we served on Chapwood. Unless
we receive documents and/or additional information explaining your responses in further
detail—including a detailed description of your efforts to locate responsive documents—we
may need to file a motion to compel. At this point, each response appears to be inaccurate.

Specifically, you claim there are no responsive documents to Requests Nos. 1 and 2. We
find that hard to believe. As an example, Request No. 2 asks for documents and
communications "concerning any lawsuits, threats of lawsuits, consumer complaints,
disciplinary actions, or accusations that accused You of fraudulent conduct (including
making false statement), including but not limited to while You maintained a relationship
with Charles Schwab[.]" Chapwood itself raises accusation in its suit *Chapwood Capital
Investment Management, LLC et al v. Charles Schwab Corporation et al*, No. 18-cv-00287-
RAS, that it "lost over 268 customer accounts" due to what it referred to as Schwab's efforts
to cause those clients to "question Chapwood and Butowsky's honesty and integrity." (ECF
NO. 1 ¶22(c)). Is it Chapwood's position now that it never actually received any complaint
related to making false statements?

Moreover, responses to at least two third-party subpoenas in this litigation have resulted in
the production of emails to or from Chapwood email addresses. These emails indicate that
you did not conduct a sufficient search of documents and communications in Chapwood's
custody and control.

Your objection that Request No. 3 "is not applicable to anything" is incorrect as a matter of
black-letter law. In order to meet relevancy requirements in discovery there only needs to be
a "possibility that the information sought may be relevant to the claim or defense of any
party." *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123–24 (D.D.C. 2013).
Because you are Chapwood's managing partner and founder, and presumably own an equity
stake in the company, Chapwood's annual income in 2016 through the present is directly

relevant to the calculation of punitive damages against you. *See About Us,* Chapwood Capital Investment Management, *available at* http://www.chapwoodinvestments.com/about-us/; *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993) (noting that the "financial position of the defendant" is "one factor that could be taken into account in assessing punitive damages" (internal quotation marks omitted)); *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) ("At least forty-three states now allow evidence of net worth to be discovered and admitted for the limited purpose of assessing punitive damages. . . . We hold that in cases in which punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth.").

What is more, your objection was untimely, and is thus waived. Objections to a Rule 45 subpoena to produce documents "*must* be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added); *Alexander v. FBI,* 186 F.R.D. 21, 34 (D.D.C.1998) (citation omitted) (concluding that a third party waived objections 16 days after being served with subpoena). Your objection was sent over a month after you were served; as a result, it is clearly waived.

We will remind you that the Court has granted our motions to compel in each instance you have refused to provide documents, including to requests similar to those made against Chapwood. Moreover, the Court has specifically acknowledged that Mr. Rich will also have "to go to the companies that have [documents] in their possession" during discovery. July 31, 2019, Hearing Tr. at 11:18.

If you believe further correspondence on this subpoena would be worthwhile, please let us know. If you are unwilling to discuss this further, we are required under the local rules to ask whether you will oppose a motion to compel against Chapwood. If you do not respond by **Monday September 30, 2019**, we will assume that you are opposed.

Best,

**Samuel Hall**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1443 | Fax: +1 202 303 2443
shall@willkie.com | vCard | www.willkie.com bio

---

**From:** ed butowsky [mailto:ebutowsky@gmail.com]
**Sent:** Wednesday, July 24, 2019 4:55 PM
**To:** Gottlieb, Michael <MGottlieb@willkie.com>
**Subject:** Chapwood Subpoena

Answers to your subpoena attached.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back.

Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

---

**Important Notice:** This email message is intended to be received only by persons entitled to receive the confidential information it may contain. Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged. Please do not read, copy, forward or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it back. Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

# EXHIBIT F

**Redacted**



Butowsky 0000622 (Highly Confidential - Attorney Eyes Only)



Butowsky 0000623 (Highly Confidential - Attorney Eyes Only)



App'x 34

Butowsky 0000624 (Highly Confidential - Attorney Eyes Only)



Butowsky 0000625 (Highly Confidential - Attorney Eyes Only)



Butowsky 0000626 (Highly Confidential - Attorney Eyes Only)

# EXHIBIT G

**Redacted**



App'x 38

Butowsky 0000967 (Confidential)

Butowsky 0000968 (Confidential)

App'x 40

Butowsky 0000969 (Confidential)

Butowsky 0000970 (Confidential)

Butowsky 0000971 (Confidential)

# EXHIBIT H

| From: | Ed Butowsky |
|---|---|
| To: | Defango; shan@chapwoodinvestments.com |
| CC: | ed@chapwoodinvestments.com |
| Sent: | 9/25/2017 10:55:26 AM |
| Subject: | Re: Meeting with Manny |

Hi there,

Ed Butowsky is inviting you to a scheduled Zoom meeting.

Topic: Ed Butowsky's Zoom Meeting

Time: Sep 25, 2017 4:00 PM Central Standard Time (US and Canada)

Join from PC, Mac, Linux, iOS or Android: https://zoom.us/j/574902784

Or iPhone one-tap :

   US: +16699006833,,574902784#  or +14086380968,,574902784#

Or Telephone :

   Dial(for higher quality, dial a number based on your current location):

      US: +1 669 900 6833  or +1 408 638 0968  or +1 646 876 9923

   Meeting ID: 574 902 784

   International numbers available: https://zcom.us/zoomconference?m=GDE4HxpR4nqzvmJQcQBPgtA27cZsGzJj

**From:** Defango <defango@protonmail.com>
**Reply-To:** Defango <defango@protonmail.com>
**Date:** Monday, September 25, 2017 at 11:44 AM
**To:** <shan@chapwoodinvestments.com>
**Cc:** ed's gmail <ebutowsky@gmail.com>, Ed Butowsky <ed@chapwoodinvestments.com>
**Subject:** Re: Meeting with Manny

App'x 44

CHAVEZ0000915

Thank you.


Sent from ProtonMail mobile


-------- Original Message --------
On Sep 25, 2017, 9:42 AM, Ashanti Montgomery < shan@chapwoodinvestments.com> wrote:


Meeting scheduled with Manny on Redtail and Zoom at 4 p.m. central, 2 p.m. pacific.


# Ashanti Montgomery

Administrative Assistant

Chapwood Investments, LLC

15455 N. Dallas Pkwy., Suite 1200

Addison, TX 75001

shan@chapwoodinvestments.com


972-865-2227 - Direct

972-386-9285 – Fax


Chapwood Investments is a Federally Registered Investment Advisory Firm.


This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) is STRICTLY PROHIBITED.   If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format.   This communication/material serves to provide general information and does not constitute investment advice or an endorsement with respect to any investment strategy or vehicle, and is not intended to be legal or tax advice for any particular person.  It is not intended to be an offer or solicitation for the purchase or sale of any financial instrument, fund (offered only by memorandum) or product and is not an official transaction confirmation or account statement.  The information contained herein is not complete, does not contain certain material information about any particular investment or Fund, including important disclosures and risk factors associated with a particular investment or Fund, does not take into account the particular investment objectives or financial circumstances of any specific person who may view it and is subject to change without notice.   Before making an investment, prospective investors are advised to thoroughly and carefully review each investment, including Fund Memorandum, with their financial, legal and tax advisors to determine whether an investment is suitable for them.  All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice.  Any comments or statements made herein do not necessarily reflect those of Chapwood Capital Investment Management, LLC.   E-mail sent through the Internet is not secure.  Please, DO NOT transmit orders, instructions (e.g. fund transfers, stop payment, etc.) or identifying information (e.g. SS#, passwords, etc.) regarding your account(s) by voice mail, email,  text message, instant messaging or facsimile.   Chapwood Capital Investment Management, LLC cannot be held responsible for carrying out such orders and/or instructions.  To be removed from our mailing list, reply to this email and add the word "REMOVE" in the Subject line.


This video provided herein is for information and entertainment purposes only and should not be considered an individual recommendation or personalized investment advice.  All investment strategies have the potential for profit or loss. Examples used are hypothetical and provided for illustrative purposes only. No client or prospective client should assume that any information presented and/or made available serves as receipt of, or a substitute for, personalized individual advice from the advisor or any financial professional.

App'x 45

CHAVEZ0000916

CHAVEZ0000917

# EXHIBIT I

**From:** Kristina Russell <kristina@chapwoodinvestments.com>
**To:** rod@rodwheeler.com <rod@rodwheeler.com>
**Cc:** Ed Butowsky <ed@chapwoodinvestments.com>
**Subject:** Family Office Database
**Date:** March 6, 2017 at 3:57:30 PM EST

Rod,

Ed asked me to send this to you.

Kristina Russell

Chapwood Investments, LLC

15455 N. Dallas Pkwy., Suite 1200

Addison, TX 75001
kristina@chapwoodinvestments.com

972-865-2227 - Direct
972-386-9285 – Fax

Chapwood Investments is a Federally Registered Investment Advisory Firm.

This transmission may contain information that is privileged, confidential, legally privileged, and/or exempt from disclosure under applicable law.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the information contained herein (including any reliance thereon) s STRICTLY PROHIBITED.  If you received this transmission in error, please immediately contact the sender and destroy the material in its entirety, whether in electronic or hard copy format.  This communication/material serves to provide general information and does not constitute investment advice or an endorsement with respect to any investment strategy or vehicle, and is not intended to be legal or tax advice for any particular person. It is not intended to be an offer or solicitation for the purchase or sale of any financial instrument, fund (offered only by memorandum) or product and is not an official transaction confirmation or account statement.  The information contained herein is not complete, does not contain certain material information about any particular investment or Fund, including important disclosures and risk factors associated with a particular investment or Fund, does not take into account the particular investment objectives or financial circumstances of any specific person who may view it and is subject to change without notice. Before making an investment, prospective investors are advised to thoroughly and carefully review each investment, including Fund Memorandum, with their financial, legal and tax advisors to determine whether an investment is suitable for them. All market prices, data and other information are not warranted as to completeness or accuracy and are subject to change without notice.  Any comments or statements made herein do not necessarily reflect those of Chapwood Capital Investment Management, LLC.  E-mail sent through the Internet is not secure.  Please, DO NOT transmit orders, instructions (e.g. fund transfers, stop payment, etc.) or identifying information (e.g. SS#, passwords, etc.) regarding your account(s) by voice mail, email, text message, instant messaging or facsimile.  Chapwood Capital Investment Management, LLC cannot be held responsible for carrying out such orders and/or instructions. To be removed from our mailing list, reply to this email and add the word "REMOVE" in the Subject line.

This video provided herein is for information and entertainment purposes only and should not be considered an individual recommendation or personalized investment advice.  All investment strategies have the potential for profit or loss. Examples used are hypothetical and provided for illustrative purposes only. No client or prospective client should assume that any information presented and/or made available serves as receipt of, or a substitute for, personalized individual advice from the advisor or any financial professional.

WHEELER0000027

**From:** Kristina Russell
**Sent:** Monday, March 6, 2017 2:00 PM
**To:** Ed Butowsky <ed@chapwoodinvestments.com>
**Subject:** FW: Family Office Database



- Family Office Database 12.xlsx, 1.2 MB



- Family Office, Private Equity, and Venture Capital.xls, 432 KB

<mailstore::MessageHeader 0x5906f2af39e0 MessageID: F9A8BCD17CC990C4F8402BD2FE8A9FDFEE8035AA9FT.X1F0DA0E110 kmsteloorporatemail.local Reference: [A6DA0A1-D3e-fade-ec5J-13e6449a7a5beeBkmsteloorporatemail.local] From: mailstore::Address 0x5906f2af3d20 Kristina Russell <kbarlan@chapwoodinvestments.com> To: [mailstore::Address 0x5906f2af3f40 ed@chapwoodinvestments.com <ed@chapwoodinvestments.com>] Cc: [mailstore::Address 0x5906f2af3200 Ed Butowsky <ed@chapwoodinvestments.com>] Subject: FW: Family Office Database X: Search-Out (XD: cell Research X-343-THEP Contains: Content-Type: multipart/mixed; boundary="_003_F9A8BCD17CC990C4F8402BD2FE8A9FDFEE8035AAFEFX1F0DA0E110kmt_" MIME-Version: 1.0 Thread-Topic: Family Office Database Thread-Index: AQHGsgkXJkgtCMG3EUx8RTV8aMGV7nP491rCoAArvGVC=ACPcgAv== x-originating-ip: [10.2.75.247] X-MS-Has-Attach: yes Content-Language: en-US X-Nonepas: None Received: (procid X750 invoked by uid X2397); 6 Mar 2017 20:58:07-0000 X-Search-RID: 5de5e-0035O-045, Accept-Language: en-US =
Email-Archive-Version: 371.030

WHEELER0000028

# EXHIBIT J

**Redacted**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

AARON RICH

██████████████
, CO ██████

                        Plaintiff,

        v.

EDWARD BUTOWSKY
2200 Bradbury Court
Plano, TX 75093

MATTHEW COUCH
2300 West Ash Street
Rogers, AR 72758

AMERICA FIRST MEDIA
2300 West Ash Street
Rogers, AR 72758

and

THE WASHINGTON TIMES
3600 New York Ave, NW
Washington, DC 20002
                        Defendants.

Civil Action No. 1:18-cv-_____


**JURY TRIAL DEMANDED**

**REDACTED PUBLIC VERSION**


# COMPLAINT

Plaintiff Aaron Rich alleges as follows:

# INTRODUCTION

1.      For close to a year, Defendants Edward "Ed" Butowsky, Matthew "Matt" Couch,

and Couch's organization known as America First Media ("AFM"), have falsely and repeatedly

alleged in public statements that Plaintiff Aaron Rich ("Aaron") is a criminal.   Specifically,

Defendants have claimed to have "proof" that Aaron (i) worked with his deceased brother Seth

Rich to steal data from the Democratic National Committee ("DNC"), (ii) provided that stolen

data to the hostile intelligence service WikiLeaks in exchange for payment into Aaron's bank

account, and (iii) engaged in deceit and obstruction of justice to cover his tracks after Seth was

murdered.  There is no proof that Aaron engaged in any of the alleged conduct—nor could there

be, because none of it happened.  But Defendants are not interested in the truth.  Instead,

Defendants are motivated by personal notoriety, financial gain, and naked partisan aims—

namely, a desire to discredit allegations that the Trump Campaign colluded with the Russian

Government in the 2016 hack of the DNC and the subsequent dissemination of DNC documents

on WikiLeaks.  In their blind pursuit of these objectives, Defendants have willfully trampled

Aaron's reputation and emotional wellbeing.

2.      Aaron's younger brother Seth was murdered in Washington, D.C. ("D.C.") on

July 10, 2016.  Politically-motivated conspiracy theories about Seth's murder began to swirl

shortly after the murder.  Because Seth had worked at the DNC, the theories held, his murder

could not have been random—instead, the conspiracy theorized that Seth had decided to be a

whistleblower and the DNC itself, perhaps even the Democratic Nominee for President, Hillary

Clinton, had ordered Seth's murder as retaliation.  Eventually, the dominant theory became that

Seth was murdered because the DNC had discovered that he had stolen emails from the DNC

and provided them to WikiLeaks, an organization that the current Director of the Central

Intelligence Agency has labeled as a hostile intelligence service.  That history forms the

background to this dispute, but this lawsuit does not seek to stop Defendants from trafficking in

Seth Rich conspiracy theories.  This lawsuit seeks accountability for Defendants' defamatory

campaign against Aaron.

3.      Aaron is an intensely private person who has devoted his entire professional life to protecting U.S. national security.   Since 2004, he has worked for the same U.S. defense contractor.   Consistent with his professional obligations, Aaron has eschewed public attention throughout his adult life.   Although he was horrified by the allegations about his brother, Aaron has kept private his disagreement with scores of individuals who took to social media and Internet discussion forums to accuse Seth of having conspired with WikiLeaks to defraud his former employer.

4.      Since the day he learned that he had lost his only sibling, Aaron has worked diligently to assist law enforcement to bring Seth's murderer to justice.   For well over a year, Aaron has devoted countless hours assisting state and federal law enforcement officials investigating the murder.   He has provided law enforcement officials with access to all of Seth's property, followed up regularly with the officials regarding their investigation, and voluntarily testified under oath as a witness before a grand jury convened to investigate Seth's murder.

5.      Defendant Ed Butowsky first injected himself into the Rich family's tragedy in early 2017, when he contacted the Rich family and offered to fund the hiring of a former D.C. police investigator, Rod Wheeler, to lead a D.C.-based private investigation into Seth's murder. Defendant Butowsky concurrently pushed Fox News to publish a story about the murder, which quoted Mr. Wheeler as having discovered proof that Seth had leaked DNC documents to WikiLeaks.   Mr. Wheeler quickly distanced himself from the quotations attributed to him, and Fox News retracted the story on May 23, 2017, saying it did not meet "the high degree of editorial scrutiny we require for all our reporting."

6.      Around the time of the Fox News retraction—in the early months of summer 2017—Defendants Matt Couch and his organization, AFM, began speaking regularly with

Defendant Butowsky.  Shortly after they made contact, Defendants Butowsky, Couch, and AFM agreed to work together to publish defamatory statements about Aaron.  Their agreement provided Defendant Butowsky with a platform to publish his false allegations about Aaron, while offering Couch and AFM a so-called "source" of information about the Seth Rich murder. Defendants Couch and AFM sought to make themselves the leading voice of the conspiracy theory that Seth Rich leaked DNC documents to WikiLeaks, motivated in part by a desire to generate notoriety, raise funds from the public, and sell Seth Rich-themed merchandise online. Defendants are also motivated by a mutual commitment to convince the public that Seth Rich was the source of the stolen DNC documents that WikiLeaks published, because they believe that proving Seth Rich's involvement would disprove allegations that the Trump Campaign colluded with the Russian Government to influence the 2016 Election.  In Defendant Couch's words, Defendants' objective is to "turn up the heat on Seth Rich" so that "the Russian narrative dies."

7.      In the summer of 2017, Defendants launched their campaign to defame Aaron. Specifically, Defendants Butowsky, Couch, and AFM conspired to promote Butowsky's fabricated claim that Aaron had worked with Seth to steal the DNC's emails and leak them to WikiLeaks in exchange for money.  Over time, Defendants' fabricated claims about Aaron became increasingly grotesque.  Defendants' false statements have directly alleged, or otherwise implied, that:

- Aaron worked with his brother, Seth, to steal and leak DNC documents to WikiLeaks, including by serving as the information technology expert that made the leak of documents to WikiLeaks possible;

- Aaron received money into his own bank account from WikiLeaks for helping Seth provide those stolen documents;

- Aaron knew in advance that his brother was going to be murdered for his role in leaking documents to WikiLeaks, but did nothing to stop it, and even warned Seth's girlfriend in advance to break up with him to protect her own safety;

- Aaron has covered up his involvement in his purported role in leaking documents to WikiLeaks; and

- Aaron has obstructed justice by interfering with law enforcement efforts to bring his brother's murderer to justice, including his purported refusal to provide law enforcement with access to investigative materials.

8.      Aaron attempted to address Defendants' lies about him in private.  In December 2017 and January 2018, Aaron sent letters to Defendants Couch and Butowsky, respectively, telling them that their allegations against him were false, and pleaded with them to cease spreading falsehoods about him.  He asked them to consider how they would feel to be accused of complicity in their own brother's murder.  After receiving those letters, Defendants doubled and then tripled down on their behavior—they continued to disseminate false statements about Aaron, and then upped the ante by conspiring to have their lies about Aaron published in a prominent national newspaper.

9.      On March 1, 2018, Defendant The Washington Times ("Times") published an "Analysis/Opinion" titled "More cover-up questions" (hereinafter "the Publication") on both its Website and in print.  Defendants Couch and AFM publicly acknowledged that the article "was put out to help vindicate our team."  The Publication contained false factual statements about Aaron that previously had been peddled by Defendants Butowsky, Couch, and AFM, including

that he downloaded the DNC emails and received money from WikiLeaks; further, the Publication also implied that Aaron is obstructing justice by refusing to be interviewed by law enforcement officials.  Defendant Butowsky is the only source cited in the Publication.  Despite having pre-publication knowledge of Defendant Butowsky's history of deliberately publishing false information about the same topic, and despite receiving notice of the falsity of the statements about Aaron after the Publication, Defendant Times has neither removed nor retracted the Publication.

10.     Every statement the Defendants have advanced regarding Aaron's alleged involvement in the WikiLeaks leak and the cover-up of his own brother's murder is false, and because the statements accuse Aaron of criminal conduct, they are defamatory per se. Defendants have acted with reckless disregard for the truth of these allegations, and they have continued to advance the claims well after being placed on notice that the claims are false. Defendants have also gone to great lengths to publicize otherwise private facts about Aaron's life.  For example, Defendants have published information about where Aaron works, the nature of his work, the fact that he holds a government security clearance, and the level of that security clearance.  Defendants have admitted that their motive for saying these things about Aaron is their desire to advance political arguments.  Worse, Defendants Couch and AFM have used these sensational conspiracy theories to increase their own profiles and followings, raise money through online fundraising platforms, and sell merchandise.

11.     Defendants have caused Aaron to suffer severe emotional, reputational, and economic harm.  On the heels of the murder of his only sibling, Aaron has been falsely accused of conspiring with a hostile foreign intelligence service, knowing that his own brother was going to be murdered (and doing nothing to stop it), and participating in a cover-up of his own

brother's murder.  Aaron has received death threats and vicious online harassment, and has been forced to incur security expenses and legal fees to address constant concerns regarding his safety. This unwelcome notoriety has taken a toll on Aaron's personal and professional wellbeing.  D.C. law entitles Aaron to damages for the economic, reputational, and emotional harm that Defendants' statements have caused.

12.     Our constitutional system leaves wide room for debate on issues of public concern, but individuals like Defendants poison that deliberate space when they flood it with fabricated information about private figures like Aaron.  Defendants are entitled to spend their own time and resources to investigate unsolved crimes, and to publicize their findings if they choose, but Defendants have no right to falsely declare that they have "proof" that innocent people have committed criminal acts.  In sum, Defendants are entitled to their own opinions, but they can and must be held accountable for their lies.  That is the purpose of this lawsuit.

## PARTIES

13.     Plaintiff Aaron Rich is a resident and citizen of the State of Colorado.

14.     Defendant Edward Butowsky is a resident and citizen of the state of Texas. Defendant Butowsky is a financial adviser and the Managing Partner of Chapwood Investments, LLC, and a frequent guest on a number of televised cable news programs.

15.     Defendant Matthew Couch is a resident and citizen of Arkansas.  He is the Founder and Host of the America First Media Group, Inc. ("AFM").

16.     Defendant AFM is registered as a nonprofit organization in Arkansas and was founded by Defendant Couch, who is listed as its registered agent and incorporator/director.  The group's first Website (www.americafirstmg.com) identified the following individuals (and their Twitter handles) as members of AFM: Flynn (@FITE4THEUSERS); Eddie Graham

(@egraham_cracker); Truth or TIG (@TruthinGovernment2016); ThinBlueLR (@ThinBlueLR);

Bill Pierce (@therealbp65), Josh Flippo (@jflippo1327), Hannibal Moot (@HannibalMoot); and

Matt Couch (@realmattcouch).[1]  At least one member of the AFM team lives and works in or

around Washington, D.C.

17.     Defendant The Washington Times, LLC ("Times") is incorporated in the state of

Delaware and has its principal place of business in Washington, D.C, where it publishes a daily

newspaper.

## JURISDICTION AND VENUE

18.     The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332

because there is diversity of citizenship among the parties, and the amount in controversy

exceeds $75,000 exclusive of interest and costs.

19.     This Court has personal jurisdiction over Defendant Times pursuant to D.C. Code

§ 13-422 because its principal place of business is in D.C.

20.     This Court has personal jurisdiction over Defendants Butowsky, Couch, and AFM

pursuant to D.C. Code § 13-423(a)(1) because Plaintiff's claims arise out of business that

Defendants have transacted in the District of Columbia and their continuous business contacts

with the District.

- Defendant AFM and its members, including Defendant Couch, have traveled to

    D.C., where they met with "sources" and from which they posted social media

    content for the purposes of raising funds and advancing their D.C.-centric

    narrative about the Plaintiff and his family.  They regularly solicit donations to

---

[1] Matt Couch, *Meet the America First Media Team*, AMERICA FIRST MEDIA, August 6, 2017,
https://www.americafirstmg.com/single-post/2017/08/06/Meet-The-America-First-Media-Team.

support taking their "investigation" to D.C., and they target their message to the D.C. market, including to local law enforcement in an effort to influence the D.C.-based investigation.   As detailed in the factual allegations *infra*, Defendants Couch and AFM regularly solicit funds, including from individuals in D.C., to assist in their efforts to defame Aaron (among others), including by soliciting funds to travel to D.C.   They encourage residents of Washington, D.C. and the surrounding suburbs to reach out and provide "information" to their team. Defendants AFM and Couch have conducted activities in D.C. that constitute overt acts that furthered the conspiracy with Defendant Butowsky.   At the time of the filing of this Complaint, Defendants Couch and AFM have traveled to and are present in D.C. to further the activities described above.

- Defendant Butowsky encouraged the publication of defamatory content about the Plaintiff in The Washington Times, a D.C.-based publication, and he has held meetings in D.C. for the purpose of advancing the same D.C.-centric conspiracy theory.   He paid money to a D.C.-based private investigator to perform an investigation in D.C for the same purpose.   Defendant Butowsky regularly conducts business in D.C. and the surrounding area and is a member of and/or participant in Washington, D.C.-based commissions and events, including the Citizens' Commission on Benghazi.   Defendant Butowsky has conducted activities in D.C. that constitute overt acts that furthered the Defendants' common scheme.

21.   Alternatively, this Court has personal jurisdiction pursuant to D.C. Code § 13-423(a)(3) because Defendants committed acts in the District of Columbia that caused tortious

injury to Plaintiff within the District of Columbia.  Defendant Times, a D.C.-based publication, produced and published defamatory content about the Plaintiff in the District of Columbia. Defendant Butowsky encouraged the publication of defamatory content about the Plaintiff in the D.C.-based publication.  The publication of defamatory conduct within D.C. constitutes overt acts that furthered the Defendants' common scheme.  Aaron suffered tortious injury in the District of Columbia by virtue of the publication of defamatory content in D.C.  Furthermore, he has suffered harm to his reputation in D.C. as a direct and proximate result of the Defendants' tortious acts.  Aaron's professional opportunities and reputation depend upon the favorable opinions of and relationship with individuals located in D.C.  He is employed by a company headquartered in Northern Virginia whose primary customer is the United States Government. He possesses security clearance granted and adjudicated by federal agencies located in and around D.C.  Many of the clients for whom he works and who decide whether to permit him to do so are located in D.C.  Aaron maintains regular contact with and is assisting law enforcement investigators based in D.C. relating to the murder of his brother in Washington, D.C.  Aaron has voluntarily testified before a grand jury convened in D.C. in connection with his brother's murder.  Plaintiff routinely travels to D.C., and has felt the injurious impact of the Defendants' statements while in the District.  For example, while Aaron was in D.C. the week of November 13, 2017, Defendant Couch tweeted messages directed to him, including one about being "on the Road," which triggered safety concerns for Aaron and his family.  That same week, one of Defendant Couch's followers who had previously written that "Aaron Rich knows more than he puts on" and "Heard he was involved with Seth for the transfer" wrote: "Waterboard Aaron Rich! All the truths will be found."

22.     Alternatively, this Court has personal jurisdiction over the Defendants pursuant to

D.C. Code § 13-423(a)(4) because Defendants committed acts outside the District of Columbia

that caused tortious injury to Plaintiff within the District of Columbia.  For the reasons discussed

above, Aaron has suffered tortious injury in the District of Columbia and Defendants additionally

satisfy each of § 13-423(a)(4)'s required "plus factors," any one of which is sufficient to trigger

personal jurisdiction: Defendants have regularly done or solicited business in the District of

Columbia; Defendants have engaged in a persistent course of conduct in the District of

Columbia; and Defendants derive substantial revenue from goods used or consumed, or services

rendered in the District of Columbia.

23.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial

part of the events giving rise to these claims occurred in this district.

## FACTUAL ALLEGATIONS

## I.     THE RICH FAMILY

24.     Aaron became a big brother when he was six-years-old and spent most of his life

looking out for his little brother, Seth.  The two boys were close growing up in Nebraska and

their bond continued to strengthen as they became adults.  In 2015, Seth was by Aaron's side as

the best man in his wedding.

25.     Nine months later, Seth was gone.  In July 2016, 27-year-old Seth was working

for the DNC and had just accepted a job assisting with voter engagement for the presidential

campaign of Democratic candidate Hillary Clinton.  On July 10, 2016 Seth was shot multiple

times and murdered just a few blocks from his home in the Bloomingdale neighborhood of

Washington, D.C.

26.     Law enforcement in and around the D.C. area has conducted a long-running

investigation into the circumstances surrounding Seth's murder, and that investigation continues

to this day.  Aaron has assisted that investigation consistently and diligently since he learned

about Seth's murder.  Law enforcement in D.C. has consistently represented that Seth's murder

was the result of an attempted robbery.  To the continued dismay of the Rich family, Seth's

murderer has not been brought to justice.

## II.      DEFENDANT BUTOWSKY'S INVOLVEMENT WITH THE RICH FAMILY AND IN PUBLISHING FALSE STORIES ABOUT THE RICH FAMILY.

27.      After Seth's murder, Defendant Butowsky reached out to the Rich family and

offered to assist the family in conducting a private investigation into Seth's murder.  Defendant

Butowsky and the Rich family engaged in telephone conversations regarding the arrangement,

including between January and March 2017.  Defendant Butowsky subsequently identified,

hired, and paid former D.C. police detective, Rod Wheeler, to "investigate" Seth's murder.

During conversations between Defendant Butowsky and the Rich family, Aaron explained that

the family was emotionally fragile in the wake of Seth's murder and the ensuing conspiracy that

has enveloped his memory.  Aaron stressed during one telephone conversation that he is a private

person, largely because his work for a prominent U.S. defense contractor requires him to

maintain a current federal security clearance.

28.      In early 2017, according to a federal lawsuit filed by Wheeler (the "Wheeler

Lawsuit"), Defendant Butowsky also was coordinating meetings in D.C. about the creation and

publication of the later-retracted Fox News article about Seth Rich.  Mr. Wheeler has alleged that

he personally attended a February 28, 2017 meeting with Defendant Butowsky and a Fox News

reporter in D.C., which Defendant Butowsky arranged and attended.  Defendant Butowsky and

then-White House Press Secretary Sean Spicer have admitted to meeting at the White House,

which Mr. Wheeler alleges he also attended on April 20, 2017.

29.     On May 16, 2017, Fox News published an article titled *Seth Rich, Slain DNC Staffer, Had Contact With Wikileaks, Say Multiple Sources*, which named only one source, Mr. Wheeler.[2]  It attributed to Mr. Wheeler a statement that his "investigation up to this point shows that there was some degree of emails exchanged between Seth Rich and Wikileaks."  Almost immediately, Mr. Wheeler publicly stated that he did not personally have any evidence substantiating this comment and only had received that information from others.[3]

30.     On May 23, 2017, Fox News retracted the story, issuing a statement that the article "was not initially subjected to the high degree of editorial scrutiny we require for all our reporting.  Upon appropriate review, the article was found not to meet those standards and has since been removed."[4]

31.     On the same day, May 23, 2017, Mary and Joel Rich published an open letter in the Washington Post stating that they had "seen no evidence, by any person at any time, that Seth's murder had any connection to his job at the Democratic National Committee or his life in politics.[5]  Anyone who claims to have such evidence is either concealing it from us or lying."  They further explained that they knew "that Seth's personal email and his personal computer

---

[2] Malia Zimmerman, *Slain DNC Staffer Had Contact With WikiLeaks, Say Multiple Sources*, Fox Nation, May 16, 2017, http://nation.foxnews.com/2017/05/16/slain-dnc-staffer-had-contact-wikileaks-say-multiple-sources, *available at* https://web.archive.org/web/20170516061131/http://www.foxnews.com/politics/2017/05/16/slain-dnc-staffer-had-contact-with-wikileaks-investigator-says.html.

[3] *See, e.g.,* Oliver Darcy, *Story on DNC staffer's murder dominated conservative media -- hours later it fell apart*, CNN, May 16, 2017, http://money.cnn.com/2017/05/16/media/seth-rich-family-response-claims-of-wikileaks-contact/index.html.

[4] Fox News, Statement on Coverage of Seth Rich Murder Investigation, Fox News, May 23, 2017, http://www.foxnews.com/politics/2017/05/23/statement-on-coverage-seth-rich-murder-investigation.html.

[5] Mary & Joel Rich, *We're Seth Rich's parents. Stop politicizing our son's murder.*, The Washington Post, May 23, 2017, https://www.washingtonpost.com/opinions/were-seth-richs-parents-stop-politicizing-our-sons-murder/2017/05/23/164cf4dc-3fee-11e7-9869-bac8b446820a_story.html?utm_term=.9512044c79d0.

were both inspected by detectives early in the investigation and that the inspection revealed no evidence of any communications with anyone at WikiLeaks or anyone associated with WikiLeaks. Nor did that inspection reveal any evidence that Seth had leaked DNC emails to WikiLeaks or to anyone else." Mr. and Mrs. Rich asked those who were promoting conspiracy theories about Seth to consider the emotional harm that their conduct was having on the Rich family, and to cease using Seth's memory as a tool to advance political arguments.

31.    On August 1, 2017, Mr. Wheeler filed suit against Defendant Butowsky, in addition to Fox News and the Fox News reporter.[6] The Wheeler Lawsuit claims *inter alia* that Defendant Butowsky bankrolled the "investigation" into Seth's murder in an effort to "debunk reports the Russians were responsible for the DNC hacks." Mr. Wheeler alleges that when he confronted Defendant Butowsky about the inaccuracy of the statements in the Fox News article, Mr. Butowsky responded that "***one day you're going to win an award for having said those things you didn't say.***" With respect to the inaccuracy of the "degree of emails" statement, Mr. Wheeler alleges that Defendant Butowsky told him: "***Well I know that's not true…I've never heard you say that…If I'm under oath, I would say I never heard him say that.***"

32.    Also on August 1, 2017, Cassandra Fairbanks, who writes about D.C. gossip and rumors for a number of partisan publications including Bigleaguepolitics.com, Sputnik International, and Gateway Pundit, authored and posted at least three articles about Aaron on BigLeaguePolitics.com.[7] The posts included audio recordings of multiple conversations that

---

[6] Complaint, *Wheeler v. Twenty-First Century Fox et al*, No. 1:17-cv-05807 (S.D.N.Y. Aug. 1, 2017) ("Wheeler Lawsuit").

[7] Cassandra Fairbanks, *Brother of Seth Rich Works for Government Contractor That Provides Cyber Defense*, BIG LEAGUE POLITICS (Aug. 1, 2017), https://bigleaguepolitics.com/brother-seth-rich-works-government-contractor-provides-cyber-defense/; Cassandra Fairbanks, *Audio: Rod Wheeler Explains Fox News Fiasco, Claims Brother Blocked WikiLeaks Inquiries*, , BIG LEAGUE

Defendant Butowsky had with separate individuals about Seth Rich, which Ms. Fairbanks claimed she received from an "anonymous" source.  The articles include the false statement that "brother Aaron Rich was actively attempting to shut down anyone looking into the WikiLeaks connection" and falsely imply that Aaron was involved in the DNC hacking by virtue of working for a company that provides cyber security.  Both articles reference a single, anonymous source.  Ms. Fairbanks subsequently has published articles, including on August 2, 2017 and on March 1, 2018 (discussed *infra*), which confirm that Defendant Butowsky is her source.

**III.    BEGINNING IN JULY 2017, DEFENDANTS BUTOWSKY, COUCH, AND AFM CONSPIRE TO PUBLISH DEFAMATORY STATEMENTS ABOUT PLAINTIFF.**

33.     Defendant AFM touts that, as a team, it has close to 200,000 followers on Twitter alone.  Defendants Couch and AFM publish AFM content on Twitter (more than 95,000 users follow @RealMattCouch, and more than 3,700 follow @americafirstmg), on Periscope (nearly 3,500 follow him @RealMattCouch), and on  Facebook (nearly 4,000 users are friends of @RealMattCouch, which lists him as a public figure, and 1,300 follow @AmericansFirstRadio), and via podcasts, including on Apple iTunes (https://itunes.apple.com/us/podcast/the-matt-couch-show-podcast/id1350535116?mt=2)                    and                    Spreaker (https://www.spreaker.com/user/mattandblueshow).   At one time, Defendant Couch was a "Super Broadcaster" on Periscope, which entitled him to collect earnings based on the number of viewers who give his broadcasts a "heart".  AFM also publishes its content on its YouTube Channel ("America First"), to which more than 1200 users subscribe, and on various Websites,

POLITICS (Aug. 1, 2017), https://bigleaguepolitics.com/audio-rod-wheeler-explains-fox-news-fiasco-claims-brother-blocked-wikileaks-inquiries/; Cassandra Fairbanks, *Audio: Seymour Hersh States Seth Rich Was WikiLeaks Source*, BIG LEAGUE POLITICS (Aug. 1, 2017), https://bigleaguepolitics.com/audio-seymour-hersh-states-seth-rich-wikileaks-source/.

including www.americafirstmg.com, and www.af-mg.com.  AFM solicits donations, and derives

notoriety, from each of the media platforms listed above.

34.     Defendant Butowsky was in contact with Defendants Couch and AFM by the time

of the May 23, 2017 Fox News retraction of the story he helped fabricate.  Defendant Couch has

explained that "*Ed Butowsky chose America First Media*" and "reached out to me multiple

times."[8]  As of August 2017, AFM had been speaking with Defendant Butowsky for months.

35.     In early July 2017, which marked one year since Seth's murder, Defendants

Couch and AFM traveled to D.C., from which they published content, including on their own

websites, social media, and Periscope (at least five separate videos appeared from their trip to

D.C.).  They also appeared on other media during the visit, including a broadcast story on One

America News Network.[9]  While in D.C., they attempted to raise money and gain greater

visibility for their campaign.



36.     Within days of returning from D.C., Defendants Couch and AFM began to

divulge private facts about Aaron, such as his place of employment and holding of a security

---

[8] Matt Couch, *Matt Couch America First Media Live #Bannon #SethRich #NPR*, Periscope,
(August 18, 2017), https://www.pscp.tv/RealMattCouch/1MYxNXODwrvGw.
[9] Matt Couch, *Matt Couch and Bill Pierce of America First Media on One America News
Network OAN*, AMERICA FIRST MEDIA, (July 12, 2017), https://www.americafirstmg.com/single-
post/2017/07/12/Matt-Couch-and-Bill-Pierce-of-America-First-Media-on-One-America-News-
Network-OAN.

clearance, and to defame him with new allegations such as that his "IT know how" gave him the knowledge necessary to hack documents from the DNC and provide them to WikiLeaks.



Matt Couch
@RealMattCouch

Follow

Our Teams are digging into the brother of Seth Rich, Aaron Rich. He has Top Security Clearance, and the IT know how to make you go hmmm.

10:03 AM - 14 Jul 2017

37.     Defendants escalated their rhetoric against Aaron within a week after the Wheeler Lawsuit publicly exposed Defendant Butowsky's role in knowingly pushing the publication of false statements.  During an August 9, 2017 AFM Periscope, Defendant Couch explained: "We have tried, we have tried to keep Aaron Rich out of this narrative because the family asked us to keep, you know, out of it and this is going to be the first time where, you know, I'm addressing things from, from a different standpoint."  He falsely accused Aaron of having called "everyone involved in this investigation" and telling "them not to talk about certain issues in this investigation."[10]

38.     The response to AFM's August 9 Periscope was immediate.  One Twitter user replied "Waterboard him and find out what he knows! #SethRichCoverUp."  Another said "Aaron, not Seth, is the IT guy.  Aaron got Seth into those files or he decrypted them.  He has a role in what Seth did or Aaron did it himself."

39.     Defendant Couch publicly disclosed Defendant Butowsky's behind-the-scenes role in the conspiracy on August 15, 2017, when Couch and AFM broadcast a live Periscope

_____

[10] Matt Couch, *America First Media Live #SethRich #DNCFraudLawsuit #ShawnLucas*, Periscope (Aug. 9, 2017), https://www.pscp.tv/RealMattCouch/1rmGPqEMLdVJN.

titled "*Where do we go from here?*" to more than 15,000 viewers.[11]   Defendant Butowsky (via

his Twitter username @EdButowsky) joined the Periscope by writing "Hi," to which Defendant

Couch responded "Good to see Ed Butowsky in the chat with us.  Ed, great to have you my

friend."



40.      Nearly 40 minutes into the August 15, 2017 Periscope, Defendant Butowsky

wrote that "*Aaron Rich needs to come out and admit money is in his account*."  That accusation

was and is false—Aaron has no money in his account from WikiLeaks or any other organization

relating to the alleged leaking of DNC documents, and no one in the Rich family ever said or

suggested otherwise to Defendants.

---

[11]   Matt Couch, *Where do we go from here???*¸ Periscope (Aug. 15, 2017),
https://www.pscp.tv/w/1nAJEeDNzLkJL/ ("August 15 Periscope").



41.    Defendant Couch responded by confirming his relationship with Defendant

Butowsky as the source of the statements about the Plaintiff.

> *Thank you Ed.  I'm going to follow Ed here.  I've talked to Ed, and Ed if you don't*
> *want me to say that then I won't say anything but you're putting it out there so*
> *I'm going to follow Ed's lead here.*  **Ed and I have had a couple of phone calls,**
> **where we had a couple of great talks, and Ed just put it out there—Aaron Rich**
> **accepted money.  Aaron Rich had money from WikiLeaks go into his personal**
> **account.  Think about that.  Aaron Rich had WikiLeaks money go into his**
> **personal account.  Ok?**

Defendant Butowsky commented "Correct," followed by "Parents confirmed."  That accusation

was and is false—Aaron received no such money, and at no point did the Rich parents ever

confirm that Aaron had received a payment of any kind.





42.    Defendant Couch responded:

I've got my friend Ed Butowsky here in this chat.  There's no one closer to this investigation than Ed, and, Ed, thank you for coming out, brother, I appreciate it. And so *if you guys wondered who America First Media was talking to, and who multiple sources we have in this investigation, Ed Butowsky's here right now,*

*folks*.  So once again I'm gonna ask you, hit those three dots and share this. Man up, woman up, share it.  Get this information out! Why not?  Why -- why is it -- why -- why wouldn't people be re-tweeting the hell out of this right now to get this information out? Everyone should be clicking those three dots and sharing this right now and you should click those three dots and you should put Matt Couch and Ed Butowsky and they're talking about the Seth Rich murder.

43.     Defendant Couch emphasized that Defendant Butowsky was "***telling you straight up, straight up, telling you straight up that Aaron Rich took money from WikiLeaks***."  Defendant Couch gave "A huge thanks to Ed Butowsky, who I guess at this point, I mean hell it's out, ***Ed joined my Periscope, yea he's one of my sources America***."

44.     During the same August 15 broadcast, Defendants Couch and AFM repeatedly accused Plaintiff of working with his brother to leak the DNC emails to WikiLeaks, and of obstructing justice, and falsely represented that the Rich parents had confirmed these false allegations, *inter alia*:

- "We've been trying to say for quite some time that ***Aaron and Seth leaked together***.  Aaron accepted money from WikiLeaks."

- "The family wants to know who killed Seth Rich.  They know everything else.  They know about the money.  They know about the leaks.  ***They know Aaron and Seth did the leaks together***.  They know all of this information."

- "***Why did Aaron Rich try to stop this investigation***?  That's what my team is trying to figure out."

45.     Defendant Couch also explained the ultimate objective of Defendants' campaign: "We turned up the heat on Seth Rich and all of the sudden the Russian story dies.  Tell me about that one, folks.  Just like Truth in Government just said.  America First Media, with our group of 9 or 10 of us, exploded the heat of the Russia, of the Seth Rich story, and the Russian narrative dies. . . ."

46.     Defendants' accusations had an immediate impact.   One viewer called Aaron a "snake" who "threw his own brother under the bus" and asked "How does Aaron sleep at night?"  Another wrote "AARON RICH GOT PAID."  A third wrote: "aaron had seth killed."

47.     Defendant AFM posted the August 15 Periscope on one of its Websites (www.americafirstmg.com), telling viewers that "Ed Butowsky dropped by America First Media LIVE tonight to drop some major bombs in the Seth Rich Investigation.  If you haven't watched this, check it out here!"   Defendant Couch tweeted the Periscope's link multiple times – both during and after the live broadcast.



48.     This single video was retweeted hundreds of times.  The same commenter who called Aaron a "snake" and wrote that "He threw his brother under the bus" retweeted the video, and later tweeted "With a brother like Aaron…who needs enemies? So sad."  Another follower tweeted about the Periscope, writing: "It's @RealMattCouch's source and Ed Butowsky was on periscope last night and revealed that Aaron has received money."   She followed it up by retweeting the Periscope and writing: "To all those that are skeptical about @RealMattCouch and his team, perhaps Ed Butowsky's words will convince you to believe #SethRich."   Another wrote: "According to @RealMattCouch, Ed Butowsky has proof that Wikileaks paid Aaron Rich (Seth's brother) for the documents."   Yet another user retweeted the video and wrote: "Important

Periscope from Matt Couch.  Help out.  Retweet.  Donate to defray expenses.  Ed Butowsky and

Aaron Rich discussed in Periscope."

## IV.   AFTER THE AUGUST 15, 2017 PERSCOPE, DEFENDANTS BUTOWSKY, COUCH, AND AFM FURTHER CONSPIRE TO DEFAME THE PLAINTIFF.

49.    Since August 2017, Defendants Couch and AFM have continued to create new

content perpetuating the same false narrative.  Defendants have not stated these accusations as

theories or opinions—to the contrary, they have repeatedly stated them to be *facts* that

Defendants have proved based on disclosed and undisclosed evidence.

50.    To take one example, a September 8, 2017 AFM Periscope repeated the same false

allegations as in previous broadcasts, including stating as follows:

> "***I don't have any remorse at this point for the family***.  And let me tell you why: Because the family, the Seth Rich family has had every opportunity in the world to come forward.  They are involved. They are 100% involved in this cover up. Joel and Mary Rich, ***Aaron Rich was involved in the leaks with Seth Rich***.  They are literally involved. And so we are working those angles constantly right now.

> ***This is a massive cover-up of epic proportions it's -- it's on the level of a JFK cover-up.  We know that Seth and Aaron did the leak.  We know that Aaron Rich took money from WikiLeaks: money went in from WikiLeaks into Aaron Rich's account.  We are asking and we have asked for, along with Ed Butowsky and others, we have asked for an audit by the IRS of Aaron Rich's bank accounts.  It is time for the detectives in Washington, D.C. or the federal government or the FBI whoever to get involved and get the bank records of Aaron Rich***.  The money trail will tell everything in this investigation.  ***There is no Russia story.  Russia is dead***.  Guccifer 2.0 was fake.  The leak was an inside job.  We have proven that.  Others have proven that.  There is no Russia anymore."

> ***"I know Ed Butowsky is working on that—we need access to Aaron Rich's bank accounts because the money went into Aaron Rich's personal accounts from WikiLeaks."***[12]

---

[12]   Matt   Couch,   *Happy   Friday   Morning!*   Periscope   (Sept.   8,   2017), https://www.pscp.tv/w/1jMJgPERzAWxL.

51.     Defendants have repeatedly and falsely stated it to be a fact—a fact that they claim to have established with both disclosed and undisclosed evidence—that the Plaintiff and his brother worked together to leak DNC internal documents to WikiLeaks, *inter alia*:

September 7, 2017 on Twitter

 **Matt Couch** 🎙️ 
@RealMattCouch

Seth Rich and Aaron Rich did the leak together, they were working together. When is Aaron Rich going to come clean for his brother?

8:30 PM - 7 Sep 2017

September 8, 2017 on Periscope
***There is no doubt that Seth Rich was the leaker.  Aaron Rich was involved. They were doing the leak together.***  I mean that, we ***literally at this point, folks, we can prove everything***, we can prove everything except for who pulled the trigger at this point and we're narrowing that as well.[13]

September 19, 2017 on Periscope
"***We know for a fact that Aaron Rich and Seth Rich were involved and did the leaks together.***"[14]

September 21, 2017 on Periscope
"***He helped Seth Rich with the leaks, we know that, everyone knows that now.***"[15]

---

[13]  Matt Couch, *Happy Friday Morning!* Periscope (Sept. 8, 2017), https://www.pscp.tv/w/1jMJgPERzAWxL.
[14] Matt Couch, *Rolling Happy Tuesday America First #SethRich*, Periscope, (September 19, 2017), https://www.pscp.tv/RealMattCouch/1DXxyOAmrkRGM.
[15] Matt Couch, *Breaking Crowdstrike hush money #SethRich #ShawnLucas,* Periscope (September 21, 2017), https://www.pscp.tv/RealMattCouch/1OdJroWvbvqxX.

<u>September 22, 2017 on Twitter</u>





**Matt Couch** 🎙
@RealMattCouch

Follow

Aaron Rich & Seth Rich did the DNC Leak together. The Family knows this. It's time to stop the bodies dropping, and tell the truth America!

1:35 PM - 22 Sep 2017

<u>October 6, 2017 on Twitter</u>



**Matt Couch** 🎙
@RealMattCouch

Follow

When is Aaron Rich going to come clean in the Wikileaks files that he and his brother sent to Assange for money? #SethRich

7:50 PM - 6 Oct 2017

<u>November 11, 2017 on Twitter</u>

**Matt Couch**
@RealMattCouch

Follow

Seth Rich, with the help of his brother Aaron Rich (A high level software guru with Northrop Gruman, one of the World's largest Defense Contractors) leaked information to Julian Assange and Wikileaks. The money went into Aaron Rich's personal bank account. #WeNeedAWarrant



52.     Defendants have repeatedly and falsely stated it to be a fact that the Plaintiff

accepted money from WikiLeaks, *inter alia*:

August 16, 2017 on Periscope

"Aaron is not a white hat, not a black hat, he's a gray hat he plays both sides of the fiddle. *He took money from WikiLeaks*."[16]

September 7, 2017 on Periscope:

*"Aaron Rich is involved.  We know from Ed Butowsky that Aaron Rich took money from WikiLeaks.  We've proved that."*[17]

September 13, 2017 on Twitter



Aaron Rich had money go into his personal bank account via Wikileaks.. Yes, they pay for good information America. #SethRich

2:50 PM - 13 Sep 2017

September 13, 2017 on Facebook



Aaron Rich had money go into his personal bank account via Wikileaks.. Yes, they pay for good information America. #SethRich

September 19, 2017 on Periscope

"With Seth Rich's murder, things we want to know is how involved was Aaron Rich?  *We know that Aaron Rich took money from WikiLeaks.  We know -- we know without the shadow of a doubt*."[18]

September 27, 2017 on Periscope

*"One thing that we know for a fact is that we are looking at multiple angles of payments from Aaron Rich and WikiLeaks and we're not just talking about one payment, we're talking about multiple payments over more than one year from what one of my sources is telling me*."[19]

---

[16] Matt Couch, *What's on Aaron Riches Amazon Wish List*, Periscope (Aug. 16, 2017), https://www.pscp.tv/w/1vAxRNLNMONxl.

[17] Matt Couch, *America First Media Live Trump winning again! Helping America!*, Periscope (Sept.7, 2017), https://www.pscp.tv/RealMattCouch/1mrGmmnamzdGy.

[18] Matt Couch, *Rolling Happy Tuesday America First #SethRich*, Periscope, (September 19, 2017), https://www.pscp.tv/RealMattCouch/1DXxyOAmrkRGM.

[19] Matt Couch, *America First Media Live Seth Rich Updates with the AMFG Team*, Periscope, (Sept. 27, 2017), https://www.pscp.tv/RealMattCouch/1BdGYWwbaqExX.

September 30, 2017 on Periscope
"***Aaron Rich is 100% involved.  Money went into Aaron Rich's account through WikiLeaks***."[20]

October 27, 2017 on www.af-mg.com
"From our sources, ***we broke that Aaron Rich and Seth Rich had done the Leak to Wikileaks together***.  ***Aaron Rich took $50,000 from WikiLeaks, he and Seth did the leaks together***."[21]

November 3, 2017 on Facebook



**America First Media**
November 3, 2017 · 🌐

Like Page    ···

We know from our Periscope with a certain someone that many of you saw, Money went into Aaron Rich's bank account from Wikileaks. #SethRich

December 14, 2017 on www.af-mg.com
"Let's do some Bulletin Facts on this case of what we know, shall we?...Joel Rich told one of our sources 'I know what my two boys did.'  ***Money went into Aaron Rich's personal bank account from WikiLeaks, per Ed Butowsky on our program***…"[22]

[20] Matt Couch, *America First Media Live Friday Night #SethRich #JaredBeck #ShawnLucas #BullTruth #Assange*, Periscope (September 29, 2017), https://www.pscp.tv/RealMattCouch/1YpKkmgnyXrJj.

[21] Matt Couch, *President Trump is inquiring about Seth Rich's Investigation*, AMERICA FIRST MEDIA GROUP, Oct. 27, 2017, https://af-mg.com/2017/10/27/president-trump-is-inquiring-about-seth-richs-investigation/.

[22] Matt Couch, *Another Holiday Without a Son*, America First Media Group, AMERICA FIRST MEDIA GROUP, Dec. 14, 2017, https://af-mg.com/2017/12/14/another-holiday-without-a-son/.

December 27, 2017 on Twitter



53.     Defendants have repeatedly and falsely stated that the Plaintiff received information in advance that Seth would be murdered, and that his prior knowledge caused him to obstruct justice by refusing to provide law enforcement investigators with access to his brother's cell phones and laptop after his murder.  These same allegations also falsely allege that Aaron participated in meetings with Seth and Donna Brazile at the DNC at which Aaron threw a chair,

and that Aaron warned Seth's girlfriend in advance to break up with Seth. Each and every aspect of these allegations are fabricated: Aaron did not know that his brother was going to be murdered; he never attended any meeting at the DNC with Seth and Donna Brazile; and he never warned Seth's girlfriend to break up with Seth or leave D.C.

September 8, 2017 on Periscope:
"I believe that *Aaron Rich knew the hit was coming*. I think that's the reason why they were in Donna Brazile's office and Aaron Rich threw a chair about a week to two weeks before the murder….I don't think he did but *I think he knew that the hit was coming*."

*Aaron Rich definitely knew the hit was coming*, because we know—we know for a fact that Aaron Rich is the one that told Kelsey Mulka to break up with Seth Rich. So, there's something that you can tweet out if you want to get some information that really gets things shaken up and this is off the liberal Twitter universe. *Aaron Rich contacted Kelsey Mulka and told her to break up with Seth Rich because he knew the hit was coming for her safety*. *Aaron Rich told Kelsey that she needed to get out of town*. I don't know if I've ever revealed that one publicly or not. *So that that we that we can confirm that Aaron Rich's the one who told Kelsey Mulka to get out of town*." [23]

September 27, 2017 on Periscope:
"From the sources that we have talked to, who Josh was with me in the meetings with me he knows they are very credible, we believe that Seth Rich did not know it was coming and *his brother did know it was coming*. *His brother didn't set it up, but I think he knew it was coming and there's a reason why Aaron Rich won't release either one of the cell phones. There's a reason why Aaron Rich won't release the laptop. There's a reason why Aaron Rich will not release the phone records. There's a reason why Aaron Rich will tell everyone not to talk about the emails. There's a reason why Aaron Rich will not tell anyone who was at this party. Everything I just told you is 100% true. It's heartbreaking. It's heart-wrenching but everything I've just told you is 100% factual and true.*"[24]

54.     Defendants have repeatedly and falsely alleged that Aaron is lying and obstructing justice, including by covering up his role in stealing documents from the DNC, and

---

[23] Matt Couch, Matt Couch Happy Friday Morning, Periscope (September 8, 2017), https://www.pscp.tv/w/1jMJgPERzAWxL.
[24] Matt Couch, *America First Media Live Seth Rich Updates with the AFMG Team*, Periscope (September 27, 2017), https://www.pscp.tv/RealMattCouch/1BdGYWwbaqExX.

refusing to release Seth's cell phones and laptop.   Those allegations are false—Aaron has

cooperated fully with law enforcement from the day he learned about Seth's murder, and

provided law enforcement with access to Seth's property, including his laptop and cell phones.

Contrary to Defendants' repeated false accusations, Aaron has actively assisted law enforcement

at each and every step of their investigation.   Examples of Defendants' false statements include:

August 16, 2017 on Periscope
*"**I want to talk about obstruction here—this is a really, really good time for Joel and Mary and Aaron to come forward** because now you literally have major major news organization breaking news that Julian Assange is coming forward with more information in this case and if you are anybody who keeps saying that this is just a botched robbery and 'conspiracy' you are in a lot of trouble, a lot of trouble."*[25]

September 15, 2017 on Twitter



September 22, 2017 on Twitter



---

[25] Matt Couch, *What's on Aaron Riches Amazon Wish List*, Periscope (August 16, 2017), https://www.pscp.tv/w/1vAxRNLNMONxl.

December 16, 2017 on Twitter



60) The Family of Seth Rich refuses to let Investigators look at the Laptop of Seth Rich. Aaron Rich even stated "I've looked at the Laptop, there's nothing there important". This is a massive cover up America. RETWEET and SHARE this information. #SethRich #HisNameWasSethRich

10:50 PM - 16 Dec 2017

55.    Defendants have also repeatedly published private employment facts about the

Plaintiff, *inter alia*:

August 20, 2017 Twitter



Fact: Seth Rich's brother Aaron Rich works for Northrop Grumman and has a Top Level Security Clearance, as an IT Guru.. #SethRich

1:22 AM - 20 Aug 2017

September 30, 2017 on Periscope
"…***Aaron Rich has a Top Security Clearance and works for Northrop Grumman, one of the largest defense Contractors in the United States***.  So, defense contractors—if you want to see a special forces person get spooked mention that you want to talk to defense contractors, like I did when I was in Omaha with Josh and his guys I was like 'hey man, let's just go up to Northrop Grumman and ask some questions' and they were like 'no, no they have a different set of laws, don't mess with defense contractors.' Aaron works for a defense contractor, one of the largest and so you have to look at that." [26]

---

[26] Matt Couch, *America First Media Live Friday Night #SethRich #JaredBeck #ShawnLucas #BullTruth #Assange*, Periscope (September 30, 2017), https://www.pscp.tv/w/1YpKkmgnyXrJj.

## V.   DEFENDANTS COUCH AND AFM ARE PROFITING FROM THEIR LIES ABOUT AARON.

56.   Defendants Couch and AFM have taken Aaron's tragedy, wrapped it in sensational lies, and commercialized it for their own pecuniary gain.  They have spread their lies about Aaron to, *inter alia*, solicit donations, sell apparel, generate advertising revenue, and monetize their social media following.

57.   Defendants Couch and AFM regularly implore their followers to make donations to "fund" their "investigation," including their travel to D.C., *inter alia*:

August 19, 2017 Twitter



February 25, 2018 on Twitter

September 28, 2017 on Twitter



**America First Media**
September 28, 2017 · 🌐

We're raising funds to meet our budget and Investigate for the rest of the year, more trips to DC planned. #SethRich
www.paypal.me/AmericaFirstMedia

July 7, 2017 on Periscope (from Washington, D.C.)

"Help us out! We cannot do it without you.  *Our GoFundMe is gofund me.com/americafirstmedia and we need your help!  But, we're on the ground.*"[27]

September 8, 2017 on Periscope

*"If you're in the Washington, D.C. area, Virginia area, Maryland area and you knew Seth Rich or you knew Sean Lucas and you want to talk, reach out to my team….Were heading back to Washington D.C.  We do plan on going to Dallas to meet with Ed Butowsky and get a lot of his information*."[28]

October 1, 2017 on Periscope

"*We need your help.  We will be back in Washington, D.C. soon and basically one day soon you're just gonna see us in D.C.*  We don't give travel dates anymore due to security purposes, but I'm excited to have Frank Whelan, Bill Pierce, Josh Flippo and *have a very large presence in Washington D.C.,  as well as our contacts on the ground in Washington D.C.* and so you're not gonna know when we're coming.  We may even be there for days before we announce it but expect us.[29]

---

[27] Matt Couch, *Another Seth Rich Bombshell Live from Washington D.C.*, Periscope (July 7, 2017), https://www.pscp.tv/RealMattCouch/1RDGlZzBnVkxL.
[28] Matt Couch, *Happy Friday Morning!*, Periscope (Sept. 8, 2017) https://www.pscp.tv/w/1jMJgPERzAWxL.
[29] Matt Couch, *Strange Land on Twitter Sunday Night Edition*, Periscope (Oct. 1, 2017), https://www.pscp.tv/RealMattCouch/1mnxempePoWxX.

February 16, 2018 on Twitter



With 80,000 Followers, if just 5% of our
followers donated $1 per month, our
Investigators could travel and work on
the Seth Rich case without any hiccups.
We need your support to continue our
Seth Rich Investigations, please donate
today. Just $1 per month goes a long
way!

9:57 PM - 16 Feb 2018 from Washington, DC

58.     Defendants Couch and AFM collect these donations through various fundraising platforms, including through a PayPal link (https://www.paypal.me/AmericaFirstMedia), labeled "Donations," on the AFM website, two Fundly campaigns (https://fundly.com/returntowashington and https://fundly.com/america-first-media), GoFundMe, and Patreon  (https://www.patreon.com/AmericaFirst).

59.     To date, Defendants Couch and AFM have used their lies about Aaron's tragedy to raised tens of thousands of dollars through these fundraising platforms.  For example, they raised $21,060 via the AFM Go Fund Me page, which has since been removed, with the professed purpose "to Retain our Matt Couch, Josh Flippo, and Bill Pierce's Travel to and from Washington DC, Website, Data Collection, and Helping to find who murdered Seth Rich."  As another example, Defendants Couch and AFM have raised more than $15,000 via various fundraisers on Fundly, including from individuals in D.C.



60.     Defendants Couch and AFM also generate revenue from their lies through the sale

of apparel, including tee-shirts. The AFM Website includes a link

(https://greatamericanera.com/search?q=america+first+media) to a "Store," where visitors can

buy, *inter alia*, an AFM branded tee-shirt with the AFM logo, with a pre-discount retail price of

$64.99 (discounted to $24.99). The store's Website states that tee-shirt sales "[s]upport the

fearless efforts of Matt Couch and the rest of the America First Media," and that "we've been

able to raise money for . . . private media investigations by the America First Media Group and

others."



61.     Defendants Couch and AFM further monetize their lies about Aaron through

online advertising; both the AFM home page and its "Seth Rich Investigation" page include

personalized advertisements.  Defendants Couch and AFM receive revenue any time a visitor clicks and/or loads these advertisements.

62.     Defendants Couch and AFM also make profit from their lies through the money they receive from social media sites like Periscope that pay users who have a certain number of followers.

63.     The more individuals view Defendant Couch's and Defendant AFMs' false content, the more money Defendants make by, *inter alia*, expanding their pool of potential donors, driving more traffic to their websites (including the advertisements on those websites), increasing the number of potential customers for their apparel, and increasing the value of their social media footprints.  Defendants Couch and AFM constantly  encourage their viewers and followers to "share" their content, *inter alia*:

> September 19, 2017 on Periscope
> "So do me a favor: ***if you have not shared this please click these three dots and share this.  That's the only way we're going to continue to get this information*** and I'm gonna do it right now myself but ***we have to continue to have you guys help us and share this information*** to get the truth out and to get the investigation out because the mainstream media is not going to cover it.  You know Fox News and CNN are not going to cover Seth Rich."[30]

> September 26, 2017 on Periscope*:*
> "Hey do me a favor.  If you've already shared this thank you so much. If you haven't shared it ***please share it***.  Get the scope out.  Let's get the information out.  Let's get as much information out as we can on this Seth Rich murder investigation.   So,  we're  getting  a  larger  audience  on  YouTube." [31]

---

[30] Matt Couch, *Rolling Happy Tuesday America First #SethRich*, Periscope (September 19, 2017), https://www.pscp.tv/RealMattCouch/1DXxyOAmrkRGM.
[31] Matt Couch, *America First Media Live Seth Rich Updates with the AFMG Team*, Periscope (September 26, 2017), https://www.pscp.tv/RealMattCouch/1BdGYWwbaqExX.

**VI.    EVEN AFTER BEING WARNED OF THE FALSITY OF THEIR STATEMENTS IN LATE 2017 AND EARLY 2018, DEFENDANTS BUTOWSKY, COUCH, AND AFM CONTINUE TO MAKE DEFAMATORY STATEMENTS.**

64.    On December 21, 2017, Aaron sent Defendant Couch a letter to the email address Defendant Couch has said publicly that he uses as his point of contact (mattcouch@af-mg.com). In that letter, Aaron told Defendant Couch that his accusations were "completely false" and that Aaron had no involvement with planning or leaking documents to WikiLeaks, never received any money from WikiLeaks, and has been cooperating with law enforcement.  Aaron's letter also addressed Defendant Couch's coordination with Defendant Butowsky, who Aaron explained had previously been caught pushing a false story about his family for the purpose of advancing a political narrative supporting President Trump.   Aaron also articulated the harm Defendant Couch has caused him and his family and asked for an apology.

65.    Defendants chose to disregard Aaron's request.    Instead, Defendants continued to publish false statements about Aaron, *inter alia*:





**Matt Couch**
@RealMattCouch

Follow

Why does Aaron Rich refuse to show any
Investigators the Phones and Laptops of
Seth Rich? Aaron knows my friends,
Aaron was involved in leaking to
Wikileaks with his little brother Seth Rich.
Aaron is protecting his own ass.
#SethRich #HisNameWasSethRich
#AmericaFirstMedia

11:23 PM - 30 Dec 2017

66.     On December 26, 2017, Aaron sent Defendant Couch the same letter via certified mail to the address that is listed in public records.  Delivery was not accepted, and the letter was returned to the Post Office to await pick up by Defendant Couch.

67.     Defendants Couch and AFM spent the last days of 2017 in the midst of a Twitter tirade, including tweeting directly to and about Aaron and accusing him of a cover up, obstruction of justice, and receipt of money from WikiLeaks.   As in previous messages, Defendants Couch and AFM claimed to base their accusations on information from Defendant Butowksy as well as undisclosed sources.  In a December 28, 2017 "Press Release" on af-mg.com, Defendants Couch and AFM wrote that "*Aaron Rich had money go into his account via Wikileaks, per our Sources*" and "*Aaron Rich and Seth Rich did the Leak together, per sources.*"[32]

68.     On January 12, 2018, Aaron sent Defendant Butowsky an email explaining that there is—and has always been—no truth to his tweet that Aaron downloaded DNC emails with

---

[32] Matt Couch, *America First Media to turn up the heat in Seth Rich Murder Investigation,* AMERICA FIRST MEDIA GROUP, December 28, 2018, https://af-mg.com/2017/12/28/america-first-media-to-turn-up-the-heat-in-seth-rich-murder-investigation/.

his brother, and how every tweet that contains lies about Aaron causes "unwanted attention, scorn, and ridicule" to his personal and professional life. The email also attached the letter that Aaron had sent to Defendant Couch, explaining: "Given my belief that you have been, and remain, the source of all the lies that he spreads about me and my family, I am requesting that you forward on my letter to him." Defendant Butowsky responded to the email with the incoherent reply: "Brad, call whenever."

69.    On January 17, 2018, Defendant Couch taped a live AFM Periscope in which he acknowledged that he had received the email from Aaron "about a week ago" and had read the contents of the letter prior to that day.[33] He proceeded to read most of the letter live on Periscope. Instead of retracting the statements that Aaron confirmed were false, Defendant Couch immediately repeated the lies, pledged to continue spreading the defamatory messages (including by traveling to D.C.), and to, in fact, exploit Aaron's letter to recruit new followers, *inter alia*:

- "I don't believe we ever said Aaron Rich killed his brother. No. ***Now did we say he was involved in helping cover things up? Yeah, yeah we we did because Aaron you won't release the phone records. Aaron, you won't release the laptop. You won't release the phone. You won't cooperate with investigators.*** So, yeah we have said that you covered things up but we never once said that you killed your brother."[34]

- "This is the biggest break in the case yet and if people aren't sharing this—if you're not getting this information out ***when Aaron Rich the brother of Seth Rich is sending me a personal letter—I need you to share this. I need you to get the information out***. We need your help in this investigation."

- "You see, ***Aaron, I don't think you know what the term brother means***. I don't think you—I don't think you even understand the word brother."

- "I'm not changing who I am for you, not now, not ever. So, with that being said, ***our investigation rolls on!*** We are closer to the truth than we have ever been. We are

---

[33]    Matt   Couch,   Matt   Couch   was   live,   Periscope   (Jan.   18,   2017), https://www.pscp.tv/RealMattCouch/1jMKgdLWpWMGL.
[34]    Matt   Couch,   *Matt   Couch   was   live*,   Periscope   (Jan.   18,   2017), https://www.pscp.tv/RealMattCouch/1jMKgdLWpWMGL.

light years ahead in this investigation than we were, than we were a year ago. *Our next trip will be back to Washington, D.C. for more investigations.  That is what we are going to do*."

- "We are 100% crowd funded…We need your help.  This is what we do.  *We now have a direct line of communication with Aaron Rich and we will utilize that and see where it leads for Matt Couch and the entire America First Media Group team, this has been some breaking news, for those of you joining us late we literally got a letter directly from Aaron Rich today, the brother of Seth Rich*."

## VII.   IN MARCH 2018, DEFENDANTS CONSPIRE TO EXPAND THE REACH OF THE DEFAMATORY CAMPAIGN.

70.     In March 2018, Defendants Butowsky, Couch, and AFM expanded the reach of their defamatory campaign to millions of additional viewers by encouraging the creation of new false, defamatory content by even more widespread publications.

71.     Defendant Times touts itself as "one of the most-often-quoted newspapers in the U.S." with a "reputation for hard-hitting investigative reporting and thorough coverage of politics and policy.  It serves more than 100,000 print readers and more than 12 million online readers."  On March 1, 2018, Defendant Times published an "Opinion/Analysis" titled "More Cover-up Questions" on its Website, followed by publication in the March 2, 2018 print edition at page B3.[35]  Defendant Times' official Twitter account (@WashTimes) tweeted the Publication to its more than 330,000 followers at least five times, three times on March 2, once on March 3, and once on March 4.

72.     The only named source in the Publication is Defendant Butowsky.  Defendant Butowsky has known the author of the Publication for years, as they both served as members on the Citizens' Commission on Benghazi in 2016.

---

[35] James A. Lyons, *More Cover-up Questions,* THE WASHINGTON TIMES, March 1, 2018, https://www.washingtontimes.com/news/2018/mar/1/more-cover-up-questions/.

73.    The Publication contained false factual statements of and concerning Aaron, including accusing him of engaging in stealing the property of a U.S. entity and selling that stolen property to a hostile intelligence service: "It is well known in the intelligence circles that Seth Rich and his brother, Aaron Rich, downloaded the DNC emails and was paid by Wikileaks for that information."   Defendant Butowsky subsequently confirmed that he was the source of this information.

74.    The Publication also asks "why hasn't Aaron Rich been interviewed, and where is he?"   That purported question is predicated on a demonstrable falsehood—that Aaron has not been interviewed by law enforcement—and it implies to a reasonable reader that Aaron has engaged in the crime of obstruction of justice.

75.    On March 3, 2018, Defendant Couch publicly confirmed that the Publication "was put out to help vindicate our team."[36]   He claimed to have found out that the purpose of the article was vindication that very morning "from some phone calls"—Defendant Couch separately explained that he had spoken to Defendant Butowsky three times the morning of March 3, 2018.   Defendant Couch and AFM broadcast live from D.C. on March 25, 2018 and confirmed that the Publication "was based on all information that our team has put out" and that "*everything in that article was from America First Media Group*.   I can't think of anything that wasn't in that article."[37]

76.    Defendant Times had knowledge prior to publishing the Publication that Mr. Butowsky was willing to lie about the subject matter of the Publication in order to advance his

---

[36] Matt Couch, *America First Media LIVE #SethRich #Mueller #KimDotcom #EdButowsky*, Periscope (Mar. 3, 2018), https://www.pscp.tv/RealMattCouch/1mrGmRDaYXDJy.
[37] Matt Couch, *Matt Couch was live*, Periscope (Mar. 25, 2018), https://www.pscp.tv/w/1ynJOAknwdvKR.

ideological narrative.  Specifically, Defendant Times has published multiple articles about the

Fox News retraction, Mr. Butowsky's role in its publication, and the resulting lawsuit.  For

example, Defendant Times published an *Associated Press* article on August 2, 2017 that

discussed the lawsuit, accused Fox News "of creating fake news," and reported that Mr.

Butowksy was "intimately involved in a story on the Rich case being prepared by Fox."[38]

77.   Defendant Times did not reach out to Aaron for comment on the Publication's

allegation of criminal wrongdoing prior to publication.

78.   On March 2, 2018, counsel for the Plaintiff sent Defendant Times a letter,

explaining the falsity of the statements in the Publication and demanding a retraction and

apology.

79.   Defendant Times did not respond, retract, correct, or apologize for the defamatory

statements in the Publication, and, in fact, continued to circulate the offending content on Twitter

on March 3 and March 4, 2018.  The defamatory content remains on its Website to this day.

80.   In the days immediately following the Publication, Defendant Couch went from

gaining an average of a few hundred Twitter followers a day in the month prior to March 2018 to

---

[38] *See* David Bauder, *Fox news hit with new charges to its credibility.* THE WASHINGTON TIMES (Aug. 2, 2017) https://www.washingtontimes.com/news/2017/aug/2/fox-hit-with-new-charges-to-its-credibility/; *see also, e.g., David Bauder & Jill Colvin,* THE WASHINGTON TIMES, (Aug. 1, 2017), https://www.washingtontimes.com/news/2017/aug/1/lawsuit-alleges-fox-news-made-up-part-of-seth-rich/; Sally Persons, *Lawsuit: Trump reviewed Fox News story about slain DNC aide Seth Rich's ties to WikiLeaks¸* THE WASHINGTON TIMES, (Aug. 1, 2017)https://www.washingtontimes.com/news/2017/aug/1/report-lawsuit-alleges-trump-reviewed-story-about-/; Sally Persons, *Fox News moves to dismiss Rod Wheeler lawsuit,* THE WASHINGTON TIMES, (Sep. 19, 2017) https://www.washingtontimes.com/news/2017/sep/19/fox-news-moves-dismiss-rod-wheeler-lawsuit/; *The Latest: Slain DNC staffer's family praises lawsuit,* THE WASHINGTON TIMES, (Aug. 1, 2017), https://www.washingtontimes.com/news/2017/aug/1/the-latest-fox-says-lawsuit-claims-completely-erro/.

more than 1,000 followers a day.  In response to the renewed attention following the Publication,

Defendants Butowsky, Couch and AFM continued to defame Aaron, *inter alia*:



81.     On the same March 2018 evening that Defendant Times launched the Publication,

Defendant Butowsky had a telephone conversation with Cassandra Fairbanks.  In part based on

that conversation, Fairbanks authored an article titled "*Exclusive=> Insider Ed Butowsky: Seth*

*Rich's Father Confirmed His Son Was the Wikileaks Leaker*" (hereinafter "Fairbanks Article"),

which was posted on the Gateway Pundit, a site that claims 15 million online visitors each

month.[39]

82.     Defendant Butowsky made and encouraged the publication of false and impliedly

false statements about Aaron in the Fairbanks Article, including that Aaron helped his brother

steal the DNC emails and provide them to WikiLeaks.  The first paragraph states: "Ed Butowsky,

the man who offered to assist the family of Seth Rich with the cost of hiring a private

investigator, has told the Gateway Pundit that during a December 2016 conversation with the

father of the slain staffer he confirmed that he 'knew what his sons did.'"  It continues:

"Speaking to Butowsky by phone on Thursday evening, he told the Gateway Pundit that during a

conversation with Joel Rich on December 17, 2016 at 3:17 p.m., the father stated 'we know what

our sons did, but we just want to find Seth's killer.'"  The statements convey to a reasonable

viewer that the Plaintiff was involved in leaking documents to WikiLeaks with his brother, Seth.

The Fairbanks Article also includes the same or similar statements regarding the Plaintiff's

employment with a defense contractor whose portfolio includes cyber security.  In addition to

---

[39] Cassandra Fairbanks, *Exclusive=> Insider Ed Butowsky: Seth Rich's Father Confirmed His Son Was the Wikileaks Leaker*, BIG LEAGUE POLITICS (Mar. 2, 2017), http://www.thegatewaypundit.com/2018/03/insider-ed-butowsky-seth-richs-father-told-knew-sons/, *available at* https://web.archive.org/web/20180302080806/http://www.thegatewaypundit.com/2018/03/insider-ed-butowsky-seth-richs-father-told-knew-sons//. The active link on the Gateway Pundit is different than the original article, which the Gateway Pundit edited after being contacted by attorneys for the Plaintiff's parents.

being posted on the Gateway Pundit Website, Ms. Fairbanks tweeted multiple messages

containing similar content via her Twitter account @CassandraRules, which has more than

131,000 followers.

## VIII.   ALL OF THE DEFENDANTS KNEW THE STATEMENTS ABOUT PLAINTIFF WERE FALSE AT THE TIME OF PUBLICATION.

83.      At all times, Defendants' factual allegations regarding Aaron have been utterly

fabricated, including allegations of Aaron's purported involvement in leaking documents to

WikiLeaks, receiving money from WikiLeaks into his bank account in exchange, participating at

meetings at the DNC with Seth and Donna Brazile, knowing about the murder of his brother in

advance, warning Seth's girlfriend to break up with him, refusing to cooperate with law

enforcement investigations, refusing to provide access to Seth's laptop and cell phones to law

enforcement, and participating in an effort to cover up his alleged activities.   None of these

allegations constitute matters of opinion—each contains specific factual allegations regarding

Aaron's conduct, and each is completely false.   Defendants' statements, when considered in the

context in which they were made—i.e., without an ounce of evidentiary support, and alongside

personal, political, and partisan statements—compel the conclusion that Defendants acted, at

minimum, with reckless disregard for the truth of the statements.

84.      Prior to conspiring with the Defendants, Defendant Butowsky knew or should

have known that his statements were false.   The Rich family has repeatedly and consistently

denied the truth of Defendant Butowsky's statements, including to him directly and to the public

on the very few occasions when they have spoken publicly.   Specifically, in their May 23, 2017

open letter in the Washington Post, Mary and Joel Rich wrote that the allegations being pushed

by Defendant Butowsky were false, and that anyone who claims to have evidence showing that

"Seth's murder had any connection to his job at the Democratic National Committee or his life in politics . . . is either concealing it from us or lying."

85.    In May 2017, Fox News publicly retracted the article that Defendant Butowsky had helped to get published, including statements attributed to Mr. Wheeler that Defendant Butowsky knew were false.  The Washington Metropolitan Police Department ("MPD"), which is investigating Seth's murder, stated that the "assertions put forward by Mr. Wheeler are unfounded."[40]  D.C. Mayor Muriel Bowser likewise stated through a spokesperson that "All claims made by Mr. Wheeler are false and take fake news to a whole new level. The family deserves better and everyday MPD continues to work diligently to solve this case."  On August 1, 2017, Mr. Wheeler formally sued Defendant Butowsky for making up statements and knowingly attributing them to Mr. Wheeler.   On January 12, 2018, Aaron sent a letter to Defendant Butowsky that explicitly and emphatically explained that he: was not involved in leaking the DNC emails; did not provide the emails to anyone, including to WikiLeaks; never received any money from WikiLeaks; was not complicit in the murder of his brother; and has cooperated with law enforcement authorized to investigate the murder of his brother.  Yet in spite of having repeatedly been told that he was spreading false statements, and having no actual evidence that supported his claims, Defendant Butowsky continues to knowingly push for the publication of false information about Aaron and his family.

86.    Defendants Couch and AFM have repeatedly publicly credited Defendant Butowsky as being the "source" of their statements about Aaron.  They have done so despite Fox News' May 23, 2017 decision to retract an article that Defendant Butowksy pushed to have

---

[40] Bethania Palma, Did DNC Staffer Seth Rich Send 'Thousands of E-Mails' to WikiLeaks Before He Was Murdered?, SNOPES, May 22, 2017, https://www.snopes.com/seth-rich-dnc-wikileaks-murder/.

published.   They have done so despite Mr. Wheeler's lawsuit having identified Defendant

Butowsky as having admitted to encouraging Fox News to publish false statements.   They have

done so despite Aaron's December 21, 2017 letter detailing why every statement they have been

spreading for months is completely false and causing him severe harm.   They have done so

despite the fact that the individuals who would actually know the truth of the statements,

including the Rich family and MPD detectives, have publicly denied the statements.   At each

moment since Defendants Couch and AFM began working with Defendant Butowksy, they have

represented Defendant Butowsky's tin-foil-hat theory as established fact.   Defendants

representations have allowed them to attract more viewers, raise more funds, and tout themselves

as "leading the way" on the Seth Rich "investigation."   Defendants Couch and AFM have made

no secret that they are committed to continuing to defame Aaron, despite knowing that their

statements have no grounding in truth, in order to pursue their own political and personal

motivations.

87.     Defendant Times knowingly relied on Defendant Butowsky as the only named

source for the Publication, despite the fact that he had been shown months prior to the

publication as having encouraged Fox News to publish false information about the Seth Rich

murder investigation.   Defendant Times had actual knowledge of Mr. Butowsky's lack of

credibility, as proven by the Times' own publication of multiple articles about the Fox News

retraction, Mr. Butowsky's role in its publication, and the resulting lawsuit.   On March 2, 2018,

the day after the Times posted the Publication online, counsel for Plaintiff notified the Times

about the falsity of the statements contained therein and demanded a retraction.   Defendant

Times neither retracted nor removed the offending content, and as of the date of this Complaint,

has never responded to Plaintiff's letter.

## IX.     DEFENDANTS HAVE CAUSED PLAINTIFF HARM.

88.     Defendants have falsely accused Plaintiff of criminal wrongdoing, including stealing and transmitting emails to a hostile intelligence service, obstructing a criminal investigation, and being an accessory to murder.  Such statements are defamation *per se*.

89.     Plaintiff has suffered substantial economic harm as a result of Defendants' campaign of defamation.  At trial, Plaintiff will prove substantial economic damages resulting from Defendants' outrageous defamatory conduct, including but not limited to security costs, loss of career opportunities, reduced productivity, and attorneys' fees.

90.     Aaron has suffered severe emotional distress as a direct and proximate result of the Defendants' actions.  The harm resulting from the baseless conspiracy theory that Defendants advanced and promoted has been especially acute given that it comes on the heels of and directly concerns the murder of his little brother.

91.     Aaron's mental anguish has manifested in various ways, including physical and emotional distress, loss of liberty, decreased ability to concentrate, compulsiveness to monitor the lies being spread about him, concerns for his own physical security and that of his family, and a diminished ability to carry out routine, every-day tasks.

92.     Aaron has become the target of death threats and vicious online harassment, which makes him feel constantly unsafe.  He has invested in security equipment, including cameras, and feels anxiety even while at home.  He is concerned when in public that someone will recognize, berate, and even assault him, prompting him to avoid crowds and public places.

93.     Neither Aaron nor his wife can engage in activities that most people deem commonplace—like posting pictures or messages on social media, or sharing contact information without thoroughly vetting the person receiving the information.

94.     Being the center of a false conspiracy web has taken a toll on Aaron's mental wellbeing.  He wakes up every day, not knowing what new, horrible lie will be spread about him, or where, or to how many people.

95.     Aaron lives with a constant, looming anxiety that the career he has dedicated more than a decade cultivating could suffer irreparable damage by the lies being circulated by the Defendants about him—despite his having done nothing wrong.

96.     Aaron seeks regular psychological treatment to address the anxiety he feels as a result of Defendants' conduct.

97.     Plaintiff will continue to suffer psychological harm and mental anguish from the accusations connecting him to his own brother's death, and the indignity of being accused of treasonous crimes he did not commit.

\*       \*       \*

### FIRST CAUSE OF ACTION:
### DEFAMATION
### (against Defendants Butowsky, Couch, and AFM)

98.     Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

99.     Plaintiff is a private figure.

100.     Defendants published multiple written and verbal defamatory statements of fact, or statements that implied knowledge of verifiable defamatory facts about Plaintiff.  Those false statements included, but are not limited to, statements that the Plaintiff:

a)   Worked in concert with his brother to steal DNC emails and transmit them to WikiLeaks, a U.S.-declared hostile intelligence service;

b) Attended a meeting at the DNC with Seth and Donna Brazile in advance of Seth's murder at which Aaron threw a chair;

c) Received money from WikiLeaks into his bank account in exchange for internal DNC emails;

d) Was complicit in his brother's own murder, including that Aaron learned in advance that Seth would be murdered, and warned Seth's girlfriend to break up with him and leave D.C. for her own safety, yet did nothing to protect or warn Seth;

e) Covered up his brother's, and his own, involvement in the DNC leak and email release to WikiLeaks; and

f) Hampered the criminal investigation into his brother's death, including by refusing to provide access to Seth's laptop and cell phones to law enforcement, by attempting to shut down law enforcement investigations into Seth's murder, and by refusing to talk to law enforcement investigators.

101.   Defendants published the statements, without privilege, as widely as practicable to multiple third parties, using the most effective means of distribution available to them including but not limited to, the Internet, newspaper publications, television broadcasts, radio broadcasts, and events open to the public  In many cases Defendants' statements were consumed by viewers, readers, or listeners thousands of times.

102.   In publishing the statements, Defendants acted with knowledge of the falsity of their statements, or with reckless disregard for the truth of their statements.  At minimum, the Defendants acted negligently—that is, without an ordinary degree of care in assessing or investigating the truth of the statement prior to publication.

103.    Defendants knew or were aware that it was highly probable that the defamatory statements were false at the time they were published, or at minimum exhibited purposeful avoidance of the truth and uttered statements so inherently improbable that only a reckless person would have published them.    Further, Defendants continued to make defamatory statements even after they had actual knowledge of the falsity of their narrative.

104.    Defendants' statements have had, and continue to have, an injurious and defamatory effect on Aaron's emotional health, professional reputation, and finances. Defendants' statements are particularly harmful because Aaron holds security clearance and works in a professional environment highly skeptical of personal ties to foreign organizations and potential national security leaks.

105.    Defendants had no privilege to publish false statements about Aaron and the false statements about Aaron were not a matter of public concern.

106.    Defendants cooperated among themselves to publish the false and defamatory statements by, among other acts, republishing and adopting the defamations of their codefendants.    Each Defendant is jointly and severally liable for the torts of the other Defendants.

107.    As a direct and proximate cause of Defendants' defamatory statements, Aaron has suffered and continues to suffer compensable and pecuniary damages.

**SECOND CAUSE OF ACTION:
DEFAMATION
(against Defendants Times)**

108.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

109.    Plaintiff is a private figure.

110.    Defendant Times published written and verbal defamatory statements of fact, or statements that implied knowledge of verifiable defamatory facts about Aaron.  Those false statements included, but are not limited to, statements that Aaron:

a) Worked in concert with his brother to steal and transmit DNC emails to WikiLeaks, a U.S.-declared hostile intelligence service;

b) Received money from WikiLeaks in exchange for internal DNC emails; and

c) Hampered the criminal investigation into his brother's death.

111.    Defendant Times published the statements as widely as practicable, using the most effective means of distribution available to them.  In many cases Defendants' statements were consumed by viewers, readers, or listeners thousands of times.

112.    In publishing the statements, Defendant Times acted with knowledge of the falsity of their statements, or with reckless disregard for the truth of their statements.  At a minimum, Defendant Times acted negligently—that is, without an ordinary degree of care in assessing or investigating the truth of the statement prior to publication.

113.    Defendant Times knew at the time the defamatory statements were published that the statements were false, or at minimum entertained subjective doubts about the veracity of the allegations, given Defendants' prior publications regarding the untrustworthiness of the chief source on which the publication relied.  Further, Defendants failed to cease making defamatory statements even after they had actual knowledge of the lack of evidentiary support for the narrative.

114.    Defendant Times had no privilege to publish false statements about Aaron, and the false statements about Aaron were not a matter of public concern.

115.    As a direct and proximate cause of Defendant Times defamatory statements, Aaron has suffered and continues to suffer compensable and pecuniary damages.

**THIRD CAUSE OF ACTION:**
**DEFAMATION PER SE**
**(against All Defendants)**

116.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

117.    Defendants' statements about Aaron constitute defamation per se because they falsely asserted, or implied, that Aaron has committed crimes for which he can be criminally indicted and convicted.

118.    Defendants made and published statements of fact, or statements that implied knowledge of verifiable defamatory facts about Aaron.

a) Defendants Butowsky, Couch, and AFM have accused Aaron of multiple federal and state crimes, including by accusing him of: stealing the property of a U.S. entity; selling that stolen property to a hostile intelligence service; participating as an accessory to his brother's murder, including by having prior knowledge that his brother was going to be murdered, warning others of the murder, taking no steps to warn his brother, and cooperating with the entity that allegedly committed the crime (the DNC) after the fact; and obstructing justice by covering up the DNC leak and leaking of documents to WikiLeaks, refusing to provide evidence of criminal conduct to law enforcement investigators, and interfering with the efforts of law enforcement investigators to solve Seth's murder.

b)  Defendant Times has accused Aaron of multiple crimes, including: stealing the

property of a U.S. entity; selling that stolen property to a hostile intelligence service;

and obstructing justice.

119.    Defendants published the statements as widely as practicable, using the most

effective means of distribution available to them.  In many cases Defendants' statements were

consumed by viewers, readers, or listeners thousands of times.

120.    Defendants knew at the time the defamatory statements were published that the

statements were false, or at minimum entertained subjective doubts about the veracity of the

allegations.  Further, Defendants failed to cease making defamatory statements even after they

had actual knowledge of the lack of evidentiary support for the narrative.

121.    Defendants' statements have had, and continue to have, an injurious and

defamatory effect on Aaron's emotional health, professional reputation, and finances.

Defendants' statements are particularly harmful because Aaron holds security clearance and

works in a professional environment highly skeptical of personal ties to foreign organizations

and potential national security leaks.

122.    Defendants cooperated among themselves to publish the false and defamatory

statements by, among other acts, republishing and adopting the defamations of their

codefendants.  Each Defendant is jointly and severally liable for the torts of the other

Defendants.

123.    As a direct and proximate cause of Defendants' defamatory statements, Plaintiff

has suffered and continues to suffer compensable and pecuniary damages.

## FOURTH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (against all Defendants)

124.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

125.    Defendants conduct was extreme and outrageous and goes beyond all possible bounds of decency and are utterly intolerable in a civilized community.  They knowingly, or at a minimum recklessly, spread false statements about Aaron as detailed above, with actual knowledge of the falsity of the statements and the emotional harm such statements were causing Aaron and his family.  The Defendants were on notice that Aaron was in an extraordinarily vulnerable condition given the nature of their verbal harassment and their topical and temporal proximity to the violent murder of his only brother.   Aaron directly informed Defendant Butowsky months before he launched the conspiracy that he was emotionally fragile, and the Rich parents notified the public in May of 2017 that these false allegations were taking a heavy emotional toll on their family's emotional wellbeing.

126.    The Defendants acted intentionally to cause, or at the very least acted with reckless disregard of the probability that their behavior would cause, Aaron to suffer severe emotional distress.  Defendants continued their intentional infliction of emotional distress despite having knowledge that it was impacting Plaintiff's emotional and mental health.

127.    As a direct and proximate result of the Defendants' statements, Aaron has suffered severe emotional distress, including continuous mental anguish, anxiety, and fear for his professional, personal, and physical security and severe emotional anguish for being accused of being involved in state and federal crimes.

128.   The Defendants outrageous conduct would cause severe emotional harm to an ordinary person and even more so to a person in Aaron's unique circumstance.

129.   Defendants cooperated among themselves to intentionally inflict emotional distress including by among other acts, publishing false and defamatory statements and republishing and adopting the defamations of their codefendants.  Each Defendant is jointly and severally liable for the torts of the other Defendants.

### FIFTH CAUSE OF ACTION:
### FALSE LIGHT
### (against all Defendants)

130.   Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

131.   Defendants publicized false statements of and concerning Aaron that placed him in a false light by falsely attributing to him all of the conduct recited *supra*.

132.   Defendants knew that the facts, representations, or imputations publicized about Aaron, were false, or at a minimum, the Defendant published them with reckless disregard for the truth of those facts.

133.   The repeated and continuous publication of false facts, imputations, and representations about Aaron placed him in a false light that would be highly offense to a reasonable person.

134.   As a direct and proximate cause of Defendants' defamatory statements, Aaron has suffered reputational and emotional harm.

### SIXTH CAUSE OF ACTION:
### INVASION OF PRIVACY
### (against Defendants Butowsky, Couch and AFM)

135.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

136.    Defendants made and communicated private facts about Aaron, absent any waiver or privilege, about which the public had no legitimate concern—specifically, Defendants publicly disclosed Aaron's private employer and the fact that he holds a federal government security clearance.  Given the sensitive nature of Aaron's security clearance, the exposure of these facts would be highly offensive to a reasonable person of ordinary sensibilities.

137.    Defendants cooperated among themselves to publish the false and private statements by, among other acts, republishing and adopting the defamations of their codefendants.  Each Defendant is jointly and severally liable for the torts of the other Defendants.

138.    As a direct and proximate cause of Defendants' defamatory statements, Aaron has suffered emotional harm.

### SEVENTH CAUSE OF ACTION:
### CIVIL CONSPIRACY FOR ALL ALLEGED TORTS
### (against all Defendants)

139.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

140.    All Defendants agreed to intentionally and maliciously participate in a civil conspiracy amongst themselves, and with other individuals, the purpose of which was to commit the torts of: Defamation; Defamation Per Se; Intentional Infliction of Emotional Distress; and False Light.

141.    Defendants Butowsky, Couch, and AFM intentionally and maliciously participated in a civil conspiracy amongst themselves, and with other individuals, the purpose of which was to commit the tort of invasion of privacy.

142.    Throughout the course of the conspiracy, the Defendants, acting in concert, coordinated in furtherance of the common scheme.

143.    Each Defendant is jointly and severally liable for the torts of the other members of the conspiracy which were committed in furtherance of the common scheme.

144.    As a result of the Defendants' conspiracy, Aaron suffered professional, reputational, and emotional harm. These torts caused the damages outlined in the previous causes of action.

## EIGHTH CAUSE OF ACTION:
## AIDING AND ABETTING  FOR ALL ALLEGED TORTS
### (against all Defendants)

145.    Plaintiff incorporates by reference the allegations of the preceding paragraphs as though fully set forth herein.

146.    Defendants Couch and AFM aided and abetted Defendant Butowsky in committing tortious acts, including Defamation, Defamation Per Se, Intentional Infliction of Emotional Distress, False Light, and Invasion of Privacy, by, among other things, providing him with the means, platform, and network.

147.    Defendants Couch and AFM knowingly and with full awareness substantially aided Defendant Butowsky's wrongful conduct.

148.    Defendant Butowsky aided and abetted Defendants Couch and AFM in committing tortious acts, including Defamation, Defamation Per Se, Intentional Infliction of

Emotional Distress, False Light, and Invasion of Privacy, by, among other things, serving as a "source" of false facts.

149.    Defendant Butowsky knowingly and with full awareness substantially aided Defendants Couch and AFM's wrongful conduct.

150.    Defendant Times aided and abetted Defendant Butowsky in committing tortious acts, including Defamation, Defamation Per Se, Intentional Infliction of Emotional Distress, and False Light by, among other things, providing them with the means, platform, and network.

151.    Defendant Times knowingly and with full awareness substantially aided Defendant Butowsky's wrongful conduct.

152.     Defendant Butowsky aided and abetted Defendant Times in committing tortious acts, including Defamation, Defamation Per Se, Intentional Infliction of Emotional Distress, and False Light by, among other things, serving as a "source" of false facts.

153.    Defendant Butowsky knowingly and with full awareness substantially aided Defendant Times' wrongful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against all Defendants, jointly and severally, as follows:

a)     An award against all Defendants to compensate for all economic damages sustained as a result of their tortious conduct;

b)     An award against all Defendants to compensate for all presumed and actual reputational damages;

c)     An award against all Defendants to compensate for all presumed and actual damages resulting from mental anguish and emotional distress;

d)      An award against all Defendants of punitive damages;

e)      Attorney's fees and costs;

f)      Injunctive relief, including but not limited to the removal of the false and

defamatory materials from any websites over which Defendants have control.

g)      Any and all other relief that the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial on all issues so triable.

March 26, 2018.                              Respectfully submitted,

                                             /s/ Michael J. Gottlieb

                                             D.C. Bar No. 974960
                                             mgottlieb@bsfllp.com
                                             Meryl C. Governski
                                             D.C. Bar No. 1023549
                                             mgovernski@bsfllp.com
                                             Andrea R. Flores (*Admission Pending*)
                                             aflores@bsfllp.com
                                             Boies Schiller Flexner LLP
                                             1401 New York Ave NW
                                             Washington, DC  20005
                                             Tel: (202) 237-2727
                                             Fax: (202) 237-6131

                                             Randall Jackson
                                             D.C. Bar No. 490798
                                             rjackson@bsfllp.com
                                             Boies Schiller Flexner LLP
                                             575 Lexington Ave
                                             7th Floor
                                             New York, NY 10022
                                             Tel: (212) 303-3650
                                             Fax: (323) 446-2350

                                             *Attorneys for Plaintiff*

CIVIL COVER SHEET

JS-44 (Rev. 6/17 DC)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Aaron Rich | Edward Butowsky<br>Matthew Couch<br>America First Media<br>The Washington Times |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **88888**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT **88888**

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Michael J. Gottlieb
Boies Schiller Flexner LLP
1401 New York Ave NW
Washington, D.C. 20005
202-237-9617

Case: 1:18-cv-00681        (B-Deck)
Assigned To : Leon, Richard J.
Assign. Date : 3/26/2018
Description: PI/Malpractice     Jury Demand

---

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

- ◯ 1 U.S. Government Plaintiff
- ◯ 2 U.S. Government Defendant
- ◯ 3 Federal Question (U.S. Government Not a Party)
- ◉ 4 Diversity (Indicate Citizenship of Parties in item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ◯ 1 | ◯ 1 | Incorporated or Principal Place of Business in This State | ◯ 4 | ◯ 4 |
| Citizen of Another State | ◉ 2 | ◉ 2 | Incorporated and Principal Place of Business in Another State | ◯ 5 | ◯ 5 |
| Citizen or Subject of a Foreign Country | ◯ 3 | ◯ 3 | Foreign Nation | ◯ 6 | ◯ 6 |

---

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
(Place an X in one category, A-N, that best represents your Cause of Action and one in a corresponding Nature of Suit)

◯ **A.** *Antitrust*
- ☐ 410 Antitrust

◉ **B.** *Personal Injury/ Malpractice*
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☒ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Product Liability

◯ **C.** *Administrative Agency Review*
- ☐ 151 Medicare Act

Social Security
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

◯ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

---

◯ **E.** *General Civil (Other)*     OR     ◯ **F.** *Pro Se General Civil*

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 27 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Conditions
- ☐ 560 Civil Detainee – Conditions of Confinement

Property Rights
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent – Abbreviated New Drug Application
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant)
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

Other Statutes
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions
- ☐ 470 Racketeer Influenced & Corrupt Organization
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act)

App'x 111

-4-

| ○ G. *Habeas Corpus/* *2255* | ○ H. *Employment* *Discrimination* | ○ I. *FOIA/Privacy Act* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus – General<br>☐ 510 Motion/Vacate Sentence<br>☐ 463 Habeas Corpus – Alien Detainee | ☐ 442 Civil Rights – Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loan (excluding veterans) |
| ○ K. *Labor/ERISA* *(non-employment)* | ○ L. *Other Civil Rights* *(non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 740 Labor Railway Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 440 Other Civil Rights<br>☐ 445 Americans w/Disabilities – Employment<br>☐ 446 Americans w/Disabilities – Other<br>☐ 448 Education | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights – Voting (if Voting Rights Act) |

**V. ORIGIN**

⦿ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi-district Litigation   ○ 7 Appeal to District Judge from Mag. Judge   ○ 8 Multi-district Litigation – Direct File

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Defamation, Defamation Per Se, IIED, False Light, Invasion of Privacy. 28 U.S.C. § 1332.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 | **DEMAND $** | Check YES only if demanded in complaint |
|---|---|---|---|
| | | **JURY DEMAND:** | YES ☒   NO ☐ |

| **VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☒   NO ☐ | If yes, please complete related case form |
|---|---|---|---|

DATE: _____3/26/2018_____   SIGNATURE OF ATTORNEY OF RECORD _~~(signature)~~_

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
**Authority for Civil Cover Sheet**

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and services of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the cover sheet.

I.     COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff if resident of Washington, DC, 88888 if plaintiff is resident of United States but not Washington, DC, and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of the case.

VI.    CAUSE OF ACTION: Cite the U.S. Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASE(S), IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# EXHIBIT K

## Hall, Samuel

| | |
|---|---|
| **From:** | Hall, Samuel |
| **Sent:** | Friday, November 08, 2019 5:26 PM |
| **To:** | 'Ed Butowsky' |
| **Cc:** | 'Joshua Riley' |
| **Subject:** | RE: Chapwood Subpoena |

Mr. Butowsky,

We have attempted to find an attorney acting on Chapwood's behalf but none of the attorneys you copied below have represented that they are acting for Chapwood, and therefore we are writing to you.  If Chapwood is currently represented in this matter, please let us know the name of that attorney and we will direct our communications to him or her.

As we detailed below, we intend on filing a motion to compel against Chapwood.  Along with that motion, we also intend on filing a motion to file certain materials under seal because you designated those materials as Highly Confidential - AEO.  Given that it is your designation that has led us to seek to file these materials under seal, we assume that you are unopposed, but we are still required under the local rules to ask for your position on the motion.   If we do not hear from you by close of business on **Monday November 11, 2019**, we will have to proceed and will note in our motion that you have not provided a position.

Regards,


**Samuel Hall**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238
Direct: +1 202 303 1443 | Fax: +1 202 303 2443
shall@willkie.com | vCard | www.willkie.com bio

**From:** Ed Butowsky [mailto:ebutowsky@gmail.com]
**Sent:** Monday, September 30, 2019 5:01 PM
**To:** Hall, Samuel <SHall@willkie.com>
**Cc:** Steven S. Biss <stevenbiss@icloud.com>; Ty Clevenger <tyclevenger@yahoo.com>
**Subject:** Re: Chapwood Subpoena

Since I am represented by legal counsel, I don't think it is appropriate for you to communicate directly with me. Ty Clevenger or someone else will respond to you.


**From:** "Hall, Samuel" <SHall@willkie.com>
**Date:** Tuesday, September 24, 2019 at 2:15 PM
**To:** Ed Butowsky <ebutowsky@gmail.com>
**Cc:** Philip Harvey <pharvey@harveybinnall.com>, Paris Sorrell <psorrell@harveybinnall.com>, "Gottlieb, Michael" <MGottlieb@willkie.com>, Meryl Governski <mgovernski@bsfllp.com>, Joshua Riley <jriley@bsfllp.com>
**Subject:** Re: Chapwood Subpoena

Mr. Butowsky,

App'x 114

We received your objections and responses to the subpoena we served on Chapwood.  Unless we receive documents and/or additional information explaining your responses in further detail—including a detailed description of your efforts to locate responsive documents—we may need to file a motion to compel.  At this point, each response appears to be inaccurate.

Specifically, you claim there are no responsive documents to Requests Nos. 1 and 2.  We find that hard to believe.  As an example, Request No. 2 asks for documents and communications "concerning any lawsuits, threats of lawsuits, consumer complaints, disciplinary actions, or accusations that accused You of fraudulent conduct (including making false statement), including but not limited to while You maintained a relationship with Charles Schwab[.]"  Chapwood itself raises accusation in its suit *Chapwood Capital Investment Management, LLC et al v. Charles Schwab Corporation et al*, No. 18-cv-00287-RAS, that it "lost over 268 customer accounts" due to what it referred to as Schwab's efforts to cause those clients to "question Chapwood and Butowsky's honesty and integrity." (ECF NO. 1 ¶22(c)).  Is it Chapwood's position now that it never actually received any complaint related to making false statements?

Moreover, responses to at least two third-party subpoenas in this litigation have resulted in the production of emails to or from Chapwood email addresses. These emails indicate that you did not conduct a sufficient search of documents and communications in Chapwood's custody and control.

Your objection that Request No. 3 "is not applicable to anything" is incorrect as a matter of black-letter law.  In order to meet relevancy requirements in discovery there only needs to be a "possibility that the information sought may be relevant to the claim or defense of any party." *In re Denture Cream Prod. Liab. Litig.*, 292 F.R.D. 120, 123–24 (D.D.C. 2013).  Because you are Chapwood's managing partner and founder, and presumably own an equity stake in the company, Chapwood's annual income in 2016 through the present is directly relevant to the calculation of punitive damages against you.  *See About Us,* Chapwood Capital Investment Management, *available at* http://www.chapwoodinvestments.com/about-us/; *TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 464 (1993) (noting that the "financial position of the defendant" is "one factor that could be taken into account in assessing punitive damages" (internal quotation marks omitted)); *Lunsford v. Morris*, 746 S.W.2d 471, 473 (Tex. 1988), *disapproved of on other grounds by Walker v. Packer*, 827 S.W.2d 833 (Tex. 1992) ("At least forty-three states now allow evidence of net worth to be discovered and admitted for the limited purpose of assessing punitive damages. . . . We hold that in cases in which punitive or exemplary damages may be awarded, parties may discover and offer evidence of a defendant's net worth.").

What is more, your objection was untimely, and is thus waived. Objections to a Rule 45 subpoena to produce documents "*must* be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B) (emphasis added); *Alexander v. FBI*, 186 F.R.D. 21, 34 (D.D.C.1998) (citation omitted) (concluding that a third party waived objections 16 days after being served with subpoena). Your objection was sent over a month after you were served; as a result, it is clearly waived.

We will remind you that the Court has granted our motions to compel in each instance you have refused to provide documents, including to requests similar to those made against Chapwood. Moreover, the Court has specifically acknowledged that Mr. Rich will also have "to go to the companies that have [documents] in their possession" during discovery. July 31, 2019, Hearing Tr. at 11:18.

If you believe further correspondence on this subpoena would be worthwhile, please let us know.  If you are unwilling to discuss this further, we are required under the local rules to ask whether you will oppose a motion to compel against Chapwood.  If you do not respond by **Monday September 30, 2019**, we will assume that you are opposed.

Best,


**Samuel Hall**
**Willkie Farr & Gallagher LLP**
1875 K Street, N.W. | Washington, DC 20006-1238

Direct: +1 202 303 1443 | Fax: +1 202 303 2443
shall@willkie.com | vCard | www.willkie.com bio

---

**From:** ed butowsky [mailto:ebutowsky@gmail.com]
**Sent:** Wednesday, July 24, 2019 4:55 PM
**To:** Gottlieb, Michael <MGottlieb@willkie.com>
**Subject:** Chapwood Subpoena

Answers to your subpoena attached.

---

**Important Notice:**  This email message is intended to be received only by persons entitled to receive the confidential information it may contain.  Email messages to clients of Willkie Farr & Gallagher LLP presumptively contain information that is confidential and legally privileged; email messages to non-clients are normally confidential and may also be legally privileged.  Please do not read, copy, forward or store this message unless you are an intended recipient of it.  If you have received this message in error, please forward it back.  Willkie Farr & Gallagher LLP is a limited liability partnership organized in the United States under the laws of the State of Delaware, which laws limit the personal liability of partners.

App'x 116